Argued and submitted July 18, 2013, resubmitted en banc January 7, affirmed
March 18, 2015

John B. WELS, Jr.,
*Plaintiff-Respondent,*

*v.*

Douglas W. HIPPE,
*Defendant,*

*and*

Le Roy HIPPE
and Cheryl Hippe,
*Defendants-Appellants.*

Jackson County Circuit Court
101215E3; A150238

347 P3d 788

Clayton C. Patrick argued the cause and filed the briefs for appellants.

Lee S. Werdell argued the cause and filed the brief for respondent.

Before Haselton, Chief Judge, and Armstrong, Ortega, Sercombe, Duncan, Nakamoto, Hadlock, Egan, DeVore, Lagesen, Tookey, Garrett, and Flynn, Judges.

NAKAMOTO, J.

Lagesen, J., concurring.

DeVore, J., dissenting.

## NAKAMOTO, J.

Defendants appeal a judgment declaring that plaintiff has an easement by prescription over a dirt road that runs through defendants' property to his property. To establish a prescriptive easement, plaintiff was required to show, by clear and convincing evidence, that his use (or use by former owners of his property) of the road on defendants' property was "open and notorious," "adverse to the rights of defendants," and "continuous and uninterrupted" for 10 years. *Thompson v. Scott*, 270 Or 542, 546, 528 P2d 509 (1974); *accord Sander v. McKinley*, 241 Or App 297, 306, 250 P3d 939 (2011). On appeal, defendants argue that plaintiff failed to prove that (1) use of the road was sufficiently adverse to defendants' rights to establish an easement and (2) use of the road continued for at least 10 years. We conclude that legally sufficient evidence in the record supports the trial court's findings and its determination that (1) plaintiff established adversity through direct evidence of his mistaken claim of right, which does not require that plaintiff show that his use interfered with defendants' use of their property, and (2) plaintiff established continuous and uninterrupted use for 10 years. Therefore, we affirm.

## I.   FACTS

Because it was undisputed at trial that plaintiff's use of the road was "open and notorious," the relevant facts relate to whether plaintiff's use of the road was adverse to defendants' rights and was continuous for 10 years. We initially address our standard of review of those facts. This case arises in equity, and defendants request that we take *de novo* review with respect to certain findings made by the trial court. *See* ORAP 5.40(8)(d). We decline to exercise our discretion to take *de novo* review, because the disputed findings have support in the record and this case is not an exceptional one that merits such review. Accordingly, we are bound by the trial court's express and implied findings of fact if supported by evidence, *Morton and Morton*, 252 Or App 525, 527, 287 P3d 1227 (2012), and we state the facts accordingly.

Plaintiff is the owner of four contiguous parcels, identified as Tax Lots 3300, 3400, 3500, and 3600. He acquired

Tax Lot 3300 in 2006 after purchasing the other three in 1998. None of plaintiff's parcels has a house on it, although plaintiff's purchase of the first three parcels included a cabin that plaintiff improved and used. Defendants on appeal, a married couple, are the owners of a 20-acre parcel where they have lived since 1973.[1]

Both plaintiff and defendants get to their respective properties from Highway 62 via Busch Road and Lewis Creek Road. From Highway 62, Busch Road passes through private property, where it connects to Lewis Creek Road. Lewis Creek Road also passes through private property, reaching defendants' residence on their property, and then continues on through defendants' property, then through private property owned by Larson, then for a significant distance through federal public land, then through private property owned by Woods, then through additional federal public land, where it ends at plaintiff's parcels. Old records indicate that Lewis Creek Road has been in existence since at least 1934. The part of Lewis Creek Road that runs through defendants' property is a dirt road, approximately 18-feet wide, and passes within 60 to 80 feet of defendants' house.

Lewis Creek Road provides the only vehicular access to plaintiff's parcels and was the means by which the seller showed plaintiff how to get to the three parcels that he purchased in December 1998. All the private property owners along Busch Road and Lewis Creek Road use the roads to access their properties. In addition to plaintiff, two other owners of private property beyond defendants' property— Larson and Woods—use the part of Lewis Creek Road that goes through defendants' property to get to their properties. Larson has a residence on his property, which includes a home business that requires parcel delivery companies to use the road.

In 2008, plaintiff sought a building permit, but the county would not issue a permit without written confirmation of plaintiff's legal access to his property. As a result, plaintiff sought to obtain written easements to confirm his

---

[1] The third defendant was also an owner of the property, but he died after plaintiff filed his complaint.

access rights from the owners along the roads between his property and Highway 62, including defendants. In seeking an easement from defendants in June 2008, plaintiff based his request on his asserted established right to use the road. Plaintiff obtained easements from several property owners, but defendants refused his request, prompting plaintiff to seek a judicial declaration that he has a prescriptive easement over Lewis Creek Road across defendants' property.

At trial, defendants did not dispute plaintiff's open and notorious use of the road. Defendants filed a trial memorandum conceding that element: "Defendants concede that plaintiff has used the roadway open and notoriously. Defendants dispute that plaintiff's use has been adverse and dispute that plaintiff's use, if adverse, has been so for the requisite 10-year period." In opening statement, defendants' counsel told the trial court that

> "for Plaintiff to prevail, he has to * * * prove that he used this road open and notoriously, adverse to Defendants for a continuous period of ten years. The case is kind of lumped into those three categories. And it's presumed if he used open and notoriously then it was adverse. And so we think that he's got that presumption going in."

Plaintiff and defendant Le Roy Hippe (defendant) provided the only witness testimony. Plaintiff testified that, before seeking a written easement, he and defendants had never discussed whether he had a right to use the road. Plaintiff explained that he had always believed that he had a right to use the road based on the seller's actions, because the road was his only means of access to his property, and because two easements that came with the property mentioned Lewis Creek Road as his means of access. By the time of trial, though, plaintiff acknowledged that he had come to understand that those easements did not cover the part of the road on defendants' property. Plaintiff also noted that he had participated in maintaining Busch Road and Lewis Creek Road, along with the other property owners.

Defendant initially testified in plaintiff's case-in-chief. During the course of that testimony, he changed his position several times regarding what he believed concerning his and the other property owners' rights of access to

their properties via Busch Road and Lewis Creek Road, including over the part of Lewis Creek Road that crossed defendants' property. He initially stated on direct examination that he and other landowners had a right of access to their properties over Lewis Creek Road. He stated that he had always assumed that he, and the other property owners, had a right to use the roads for access to their properties. Defendant also admitted that plaintiff was an owner of property on Lewis Creek Road and that plaintiff occupied the same position that defendants and the other property owners occupied and had the same right to use the road. On cross-examination by his counsel, defendant asserted that, if a property owner disputed his right to have access to his property over the roads, then his access was at the "goodwill and grace" of the owner. However, on redirect examination, defendant acknowledged that he had learned that he does not have a written easement to use the roads that crossed the properties of other landowners and then testified that he was confused on the issue and did not know whether he had a right to use the roads.

Testifying during defendants' case-in-chief, defendant confirmed that he believed that Larson had a right to use the road and did not need defendants' permission. He also testified that, in "the last few years," he had put a chain across Lewis Creek Road where it enters his property; however, he left the lock open and gave a key to plaintiff, Larson, UPS, Federal Express, and the power company.[2] Defendant stated that he had never prevented plaintiff or the other landowners from crossing his property on the road and had no objections to plaintiff's use of the road. The court then sought to learn why defendant was objecting to the easement, and plaintiff established that defendants had demanded $70,000 for the easement.

Defendant testified on two other subjects during defendants' case-in-chief: whether plaintiff's use of the road interfered with defendants' use and whether plaintiff had sought permission from defendants to use the road. Defendant explained that plaintiff's use of the road did not

---

[2] Defendant also testified that he had a key for Woods but had not yet had the opportunity to give it to him.

interfere with his use of his land, but his wife was always complaining that everything was dusty as a result of people driving on the unpaved road. Defendant further testified that, in 2003 or 2004, during a conversation with plaintiff by the highway, he had told plaintiff that "he did have my permission to go through my property. If he had any concerns."

In contrast to defendant's testimony that he gave plaintiff permission to use the road, plaintiff testified that, although he remembered generally the conversation with defendant by the highway, he did not remember defendant ever telling him that he had permission to cross defendants' land. Defendant had failed to mention that grant of permission in his deposition, and he made no claim of permission in his answer to the lawsuit. The trial court was not persuaded that the conversation about permission had actually occurred and so found. We are bound by that factual and credibility finding.

The trial court ruled that plaintiff had established a prescriptive easement in Lewis Creek Road across defendants' property as to the three parcels purchased in 1998. The court observed in its letter opinion that the parties agreed that, "for the most part," the requirements for a prescriptive easement—which it described as "the use was open or notorious, and continuous and uninterrupted and adverse to the interest of the other party for a period of at least ten years"—were met. Addressing plaintiff's adverse use of the road, which the parties had disputed at trial, the court found and concluded as follows:

> "Adverse use of a disputed roadway can be shown in two different ways.
>
> "1) Open [use] for ten years equates to a presumption of adversity, *Feldman [et ux] v. Knapp [et ux]*, 196 Or 453, 250 P2d 92 (1952). This presumption can be overcome by showing the easement was over an existing way and the use did not interfere with the owner's rights, *McGrath v. Bradley*, 238 Or App 269, 242 P3d 670 (2010). Such presumption can also be overcome by showing the use was 'permissive,' but to overcome the presumption the evidence must do more than show 'mere acquiescence' in the non-owner's use of the land, *Id. & Feldman Supra*; or

"2) Direct evidence that claimant mistakenly thought he had a right to use the property (e.g., Plaintiff always thought he had the right and so never asked for permission). *Kondor v. Prose*, 50 Or App 55, 622 P2d 741 (1981).

"The Court is of the opinion that Plaintiff satisfies 'adversity' using both criteria. As to the three parcels acquired by Plaintiff in 1998, Tax Lot 3400, 3500 and 3600, there exists a presumption of adversity which Defendant admitted has on occasion 'interfered' with Defendant's right on his property. (Viewing vehicles go past his house in close proximity to the subject road.) Such interference prevents Defendant from overcoming the presumption.

"Further it is clear that claimant mistakenly thought he had a right to use the subject property and therefore never asked for permission until he requested the easement herein. Since the road had been in existence for many years beyond the time Plaintiff purchased his property and because Plaintiff until the time he requested an easement, thought he had a right to use the road, adversity is satisfied here as well."

The court also concluded that plaintiff had demonstrated continuous use of the road to reach the three parcels that he purchased in 1998, but that plaintiff had not proved continuous use of Lewis Creek Road to reach Tax Lot 3300 for 10 years and had no easement for that parcel.

The court entered a general judgment, declaring, in favor of plaintiff, a perpetual easement for ingress and egress to Tax Lots 3400, 3500, and 3600 over Lewis Creek Road across defendants' property. The court also entered a supplemental judgment awarding plaintiff his costs. Defendants appeal both the general and supplemental judgments, challenging the trial court's conclusion that plaintiff proved the disputed elements of a prescriptive easement in the road.

## II. ANALYSIS

A. *Statutory bar based on recreational use*

Before turning to the merits of defendants' primary arguments, we first address and reject defendants' contention that a statute, ORS 105.692(1), barred the establishment

of a prescriptive easement. Under ORS 105.692(1), "[a]n owner of land who either directly or indirectly permits any person to use the land for recreational purposes * * * does not give that person or any other person a right to continued use of the land for those purposes without the consent of the owner." Defendants assert that the statutory bar applies because plaintiff, who owned a cabin on his own land, traversed the road for recreational purposes.

The plain text of that statute, though, as supported by its context as part of the Public Use of Lands Act, applies only when a landowner permits the general public to use the landowner's land for recreational purposes. That reading of the statute is also supported by the legislature's declared policy in enacting the Public Use of Lands Act and by the case law interpreting other provisions within the same act. *See* ORS 105.676 ("The Legislative Assembly hereby declares it is the public policy of the State of Oregon to encourage owners of land to make their land available to the public for recreational purposes * * * by limiting their liability toward persons entering thereon for such purposes and by protecting their interests in their land from the extinguishment of any such interest or the acquisition by the public of any right to use or continue the use of such land for recreational purposes * * *."); *Liberty v. State Dept. of Transportation*, 342 Or 11, 21-22, 148 P3d 909 (2006) (holding that the act's liability immunity does not apply to an owner who allows the public to cross its land to engage in recreational activities on another's land); *Conant v. Stroup*, 183 Or App 270, 276, 51 P3d 1263 (2002), *rev dismissed*, 336 Or 126 (2003) (explaining that the act was based on a model act that has uniformly been interpreted to apply "only when landowners permit members of the public generally to use private property for recreational purposes"). Thus, ORS 105.692(1) is inapplicable to the facts presented here—plaintiff's use of a road that runs through defendants' property so that plaintiff may get to and use his own property for recreational purposes—and does not bar the establishment of a prescriptive easement in this case.

B.  *Proof of adverse use*

We turn to defendants' remaining and primary arguments, which concern whether plaintiff properly established

the elements of a prescriptive easement. Defendants assert as their first assignment of error that the trial court "erred in granting the plaintiff a prescriptive easement over the defendants' property, and in ruling that the plaintiff's use of the roadway had been adverse to the defendants, and that such adverse use had been continuous for ten years." Thus, as noted, defendants assert that plaintiff failed to establish two of the elements required for a prescriptive easement: (1) the adversity of plaintiff's use of Lewis Creek Road across their property and (2) the length of any adverse use. To establish those elements by clear and convincing evidence, plaintiff was required to show that the truth of the facts asserted was "highly probable." *Sander*, 241 Or App at 306.

1.  *Restatement (First) of Property § 458*

This case in large part concerns the appropriate method of proving adverse use for purposes of establishing a prescriptive easement. For its understanding of the adverse use element, the Oregon Supreme Court has repeatedly relied on section 458 of the *Restatement (First) of Property* (1944). For example, in *Thompson*, the court stated that "[a]dverse use is defined as follows" in section 458 of the Restatement, and then quoted that section with approval. 270 Or at 548 n 8.

*Thompson* was not the first case in which the Supreme Court relied on the Restatement formulation of adverse use. In *Feldman et ex. v. Knapp et ux.*, 196 Or 453, 474, 250 P2d 92 (1952), the court relied on the Restatement in a passage addressing the use of property under a claim of right. Other Supreme Court cases relying on section 458 of the Restatement are *Thompson v. Schuh*, 286 Or 201, 211, 593 P2d 1138 (1979); *Hamann v. Brimm*, 272 Or 526, 529, 537 P2d 1149 (1975); *Arrien v. Levanger*, 263 Or 363, 371, 502 P2d 573 (1972); and *Hay v. Stevens*, 262 Or 193, 196, 497 P2d 362 (1972). The Supreme Court has never disavowed the definition of adverse use in section 458 or the idea that Oregon courts should look to section 458 for their understanding of adverse use for purposes of a pre-scriptive easement. Indeed, as defendants recognize, in *Arrien*, the Supreme Court acknowledged the requirement in the Restatement that a claimant seeking a prescriptive

easement must show that the claimant's use is "not made in subordination to those against whom it is claimed to be adverse," 263 Or at 371 (internal quotation marks omitted); the court concluded in that case that, because there was no evidence that the claimant had used the servient owner's land in subordination to the servient owner, the trial court "erred in finding that [the claimant's] use was not adverse," *id.* at 371-72. We thus disagree with the dissent's view that the Supreme Court has merely "made references" to "general concepts" in the Restatement that are of little import to the analysis in this case. 269 Or App at 830 (DeVore, J., dissenting).

Accordingly, to set the context, we first discuss at length the Restatement's formulation of adverse use.[3] The Restatement formulates the test for adverse use as follows:

"A use of land is adverse to the owner of an interest in land which is or may become possessory when it is

"(a)  not made in subordination to him, and

"(b)  wrongful, or may be made by him wrongful, as to him, and

"(c)  open and notorious."

*Restatement* at § 458.

The Restatement explains that the key concept with respect to sub-element (a)—use not in subordination— is non-recognition of the authority of the owner to prevent the plaintiff's use:

"To be adverse it is not essential that a use be hostile. It is not necessary that it be made either in the belief or under a claim that it is legally justified. It is, however, necessary that the one making it shall not recognize in those as against whom it is claimed to be adverse an authority either to prevent or to permit its continuance. *It is the non-recognition of such authority at the time a use is made*

---

[3] Section 457 of the Restatement sets forth the elements for creation of an easement by prescription, namely, use that is "adverse" and "for the period of prescription, continuous and uninterrupted." As stated by the Oregon Supreme Court in *Thompson*, 270 Or at 546, an additional element of proof—use that is "open and notorious"—is required in Oregon. The Restatement formulation also requires proof of "open and notorious" use, but as a sub-element of "adverse" use instead.

*which determines whether it is adverse.* \* \* \* A use of land is adverse when made as of right even though no right exists. \* \* \* A use which is not made in recognition of and in submission to a present authority to prevent it or to permit its continuance is adverse though made in recognition of the wrongfulness of the use and, also, of the legal authority of another to prevent it."

*Restatement* at § 458 comment c (emphasis added). The Restatement also provides further guidance on what is meant by a "claim of right" as referred to in comment c:

"As indicated in Comment *c*, it is not necessary in order that a use be adverse that it be made either in the belief or under a claim that it is legally justified. The essential quality is that it be not made in subordination to those against whom it is claimed to be adverse. Yet he who claims a right in himself is impliedly asserting an absence of any right in another inconsistent with the right claimed. Hence one who uses under a claim of right himself is denying a use by the permission of another. *Quite commonly, therefore, the absence of submission to another is evidenced by the fact that the one making the use did so under an affirmative claim of right in himself.*"

*Id.* at § 458 comment d (emphasis added).

With respect to sub-element (b) of the Restatement formulation of adverse use—uses that are "wrongful" or "may be made [by the owner] wrongful"—the key idea is whether the landowner against whom the adverse use is claimed could "protect himself by vindicating his rights through legal proceedings." *Restatement* at § 458 comment f. Thus, for example, a neighbor could build a structure on the neighbor's property that receives support from an adjoining owner's land, but the use is not wrongful and so cannot be adverse to the adjoining owner. *Id.* at 458 comment e. The parties do not discuss this sub-element, but it is apparent from the nature of the use of the road over defendants' land that this sub-element was met.

Finally, with respect to sub-element (c) of the Restatement formulation—"open and notorious" use—the Restatement explains that the clause is to protect those owners against whom the adverse use is claimed. *Restatement* at § 458 comment h. The requirement of open and notorious

use "enables them to protect themselves against the effect of the use by preventing its continuance." *Id.* That sub-element of adversity is satisfied by the owner's actual knowledge of the use being made or, in the absence of actual knowledge, when the owner has "a reasonable opportunity to learn of its existence and its nature." *Restatement* at § 458 comment i. As stated earlier, defendants do not dispute that plaintiff's use of Lewis Creek Road over their property was open and notorious.[4]

## 2. *The challenged determination*

It follows that the only sub-element of adverse use actually in contention in the trial court was whether plaintiff's use of Lewis Creek Road was not made in subordination to defendants. On appeal, the parties dispute the permissible methods of proving that sub-element. As we explain below, the Restatement formulation of adverse use, and particularly of the sub-element pertaining to lack of subordination, is key to an understanding of *Kondor v. Prose*, 50 Or App 55, 622 P2d 741 (1981), and another of our more recent cases regarding proof of adverse use. It is also key to our conclusion in this case that the trial court's ruling was correct.

In light of what was actually in dispute, the trial court determined that plaintiff could establish that his use of the road was adverse to the rights of defendants in two ways: (1) through the use of a rebuttable presumption that the use was adverse, which arises through open and continuous use for the prescribed period, citing *Feldman*, 196 Or at 471, or (2) through direct evidence of the nonsubordinate use, that is, that plaintiff used the road under a claim of

---

[4] The dissent's argument that our holding effectively drops the "open and notorious" element from the proof required for a prescriptive easement, *see* 269 Or App at 838 (DeVore, J., dissenting), is incorrect. First, the dissent fails to fully acknowledge that defendants conceded the "open and notorious" element and that the trial judge proceeded accordingly. 269 Or App at 824 (DeVore, J., dissenting). Use not in subordination to the servient owner is a distinct and separate element from open and notorious use of the road; however, the dissent appears to conflate the two. Second, the dissent's argument depends on an inference that the trial court assumed that plaintiff had proved open and notorious use from his proof of use not in subordination to defendants. That inference is not supported by the record because defendants conceded at the outset of trial that plaintiff's use of the road was open and notorious.

right, citing *Kondor*, 50 Or App at 60. The court then concluded that plaintiff had established adversity in both ways. Plaintiff defends that view of the law.

Defendants agree that the trial court correctly stated that a plaintiff may rely on a rebuttable presumption of adverse use that arises from proof of 10 years of open and continuous use of the defendant's property. *McGrath v. Bradley*, 238 Or App 269, 274, 242 P3d 670 (2010). Defendants argue, however, that the trial court erred because it was bound to consider *only* that method of proof because the case concerned a jointly used road and that the evidence at trial established that they had rebutted the presumption. We reject the first premise of defendants' argument, and, because of that and because the trial court correctly determined that plaintiff had established adverse use given his evidence that his use of the servient property was not in subordination to defendants, we need not—and the dissent should not—reach defendants' argument that they rebutted the presumption that, according to defendants, applies.

### 3. *Proof by direct evidence and by presumptions*

First, defendants cite no case holding that a plaintiff seeking to establish a prescriptive easement over a jointly used road can prove adverse use of the road *solely* through the rebuttable presumption of adverse use that arises upon proof of 10 years of open and continuous use. We, too, have found no case in which an Oregon court has held that a plaintiff's proof of adverse use to establish a prescriptive easement is so limited.[5]

Instead, based on our review of the case law on prescriptive easements in Oregon, we conclude that the trial court correctly determined that a plaintiff may also establish a prescriptive easement by proving the disputed sub-element of adverse use—use not in subordination to the servient owner—through direct evidence of a claim of right, in accordance with *Kondor*. The discussion of adverse use in *Kondor* adheres closely to the description of adverse use in section 458 of the Restatement.

---

[5] Neither has the dissent.

Our case in *Kondor*, although not directly citing to the Restatement discussion of adverse use, adhered to the Restatement as it had been expressed in earlier Oregon Supreme Court cases. In *Kondor*, we affirmed a judgment declaring a prescriptive easement in the plaintiffs over a road that ran through the defendants' property and provided the only access to the plaintiffs' property. We explained that adverse use means "that the use is not in subordination to [the rights of the property owner]. Therefore, even if the user mistakenly believes he has the right to use the easement, that use is sufficiently adverse." 50 Or App at 60 (citing *Arrien*, 263 Or at 371, and *City of Ashland v. Hardesty*, 23 Or App 523, 527-28, 543 P2d 41 (1975)). We then stated that open and continuous use for 10 years creates a presumption that the plaintiff is using the road by a claim of right that is adverse to the rights of the property owner, which can be rebutted with evidence of permission. *Id.* (citing *Trewin v. Hunter*, 271 Or 245, 246-47, 531 P2d 899 (1975), and *Feldman*, 196 Or at 471-73). That discussion tracks the Restatement formulation of adverse use because it emphasizes sub-element (a)—use that is not in subordination to the servient owner—including an adverse user's mistaken "claim of right."

Defendants attempt to distinguish that discussion by reading *Kondor* narrowly. Defendants contend that the statement in *Kondor* that, "even if the user mistakenly believes he has the right to use the easement, that use is sufficiently adverse," 50 Or App at 60, simply means that "mistakenly believing you have the right to use a roadway does not defeat the initial presumption of adversity created by ten years of open and notorious use." Thus, in defendants' view, the trial court misread *Kondor* when the court stated that plaintiff could demonstrate "adversity"—in this case, referring to the sub-element of nonsubordination—through "[d]irect evidence that claimant mistakenly thought he had a right to use the property," such as by showing that plaintiff "always thought he had the right and so never asked for permission."

We do not read *Kondor* as narrowly as defendants and the dissent do, for two reasons. First, defendants and the dissent overlook *Kondor*'s reference to the sub-element of

nonsubordinate use. That reference unmistakably points to the Restatement formulation of adverse use and the recognition that using a road based on a "claim of right" is in effect the same as using the road not in subordination to the property owners' rights, as required by sub-element (a) in section 458 of the Restatement. The gravamen of the sub-element is use "not made in subordination to those against whom it is claimed to be adverse." *Restatement* at § 458 comment d. Either a belief in a legal right or a claimed legal right to use the servient property is inconsistent with use by permission of the servient owner, thus establishing use that is not in subordination to the servient owner. *Id.* [6]

Second, defendants argue that the trial court's reading of *Kondor* was incorrect because the nonsubordination sub-element of adverse use cannot be proved through direct evidence, such as plaintiff's testimony here that he used the road for 10 years believing that he had the right to do so. That is also a focus of the dissenting opinion. *See* 269 Or App at 830-33. (DeVore, J., dissenting.) However, in *Sander*, we have more recently addressed and explicitly stated that the nonsubordination sub-element of adverse use is susceptible to proof through direct evidence of a claim of right, as suggested by *Kondor*.

In *Sander*, which also involved the plaintiffs' use of a road across the defendants' land for access to their property, 241 Or App at 299, we explained that a claimant can "directly" show "that the claimant's use was not in subordination to the rights of the property owner," *id.* at 306. Such direct evidence can be based on the claimant's "mistaken belief that he or she has the right to use the servient property." *Id.* at 306-07.

The dissent deals with *Sander* by rejecting it in its entirety. 269 Or App at 833-39 (DeVore, J., dissenting.)

---

[6] We disagree with the dissent's characterization of the analysis in *Kondor*, which is that it was divorced from the principles in the Restatement formulation of adverse use and simply "proceeded on the familiar principle that continuous, open, and notorious use of a road would be *presumed* to be adverse—that is, to be without the defendants' permission." 269 Or App at 833 (DeVore, J., dissenting) (emphasis in orginal).

However, we rely on *Sander* for the narrow issue of permissible proof on the sub-element of nonsubordination at stake in this case. Whatever disagreements the dissent may have with other aspects of *Sander* should be raised in an appropriate case on another day. As to the narrow issue we decide, the dissent may be contending that there is necessarily mischief to be made by permitting a claimant to testify that the use was not in subordination to the servient landowner because he or she used the servient property without permission of the landowner, believing in a right to use the property. We disagree. Witnesses testify concerning their subjective beliefs and knowledge in all manner of cases; we also routinely call on factfinders to assess the credibility of such testimony.

Defendants' argument about *Kondor* is limited, and the rest of their argument focuses on the facts that they established consonant with rebutting the presumption of adverse use. Although neither we nor the Oregon Supreme Court have held that a plaintiff must establish adverse use only by relying on the presumption of adverse use that arises from open and notorious use of the defendant's property for 10 years, defendants assume that that is so. Defendants rely on two Supreme Court cases, *Woods v. Hart,* 254 Or 434, 458 P2d 945 (1969), and *Trewin,* and four of our cases: *Read v. Dockey,* 92 Or App 298, 758 P2d 399 (1988); *Hayward v. Ellsworth,* 140 Or App 492, 915 P2d 483 (1996); *R & C Ranch, LLC v. Kunde,* 177 Or App 304, 33 P3d 1011 (2001), *modified on recons,* 180 Or App 314, 44 P3d 607 (2002); and *Webb v. Clodfelter,* 205 Or App 20, 132 P3d 50 (2006). Citing *Webb* and *R & C Ranch,* defendants note that a servient owner may rebut the presumption of adverse use by proof that the claimant's use of a preexisting road did not interfere with the servient owner's use. Defendants also contend that the facts in this case are indistinguishable from the facts in *Woods* and *Trewin.* Specifically, they argue that, as in *Woods* and *Trewin,* the following facts were sufficient to rebut the presumption of adverse use: the road was in existence before either of the parties acquired their properties, plaintiff used the road through defendants' property with defendants' knowledge, and plaintiff's use did not interfere with defendants' use. Similarly, defendants argue that the facts in *Read* and *Hayward* are

similar to those in this case and that the claimants in those cases failed to prove adverse use.

The dissent defends defendants' assumption, offering a rationale for why a plaintiff must establish the element of adverse use solely by relying on the presumption of adverse use that arises from open and notorious use of the defendants' property for 10 years. Yet, as noted, defendants' argument about appropriate methods of proof is limited to its argument that the trial court misread *Kondor*, an argument that we have rejected. The focus of defendants' appeal concerns whether the record reflects that they rebutted the presumption of adverse use in accordance with the means of rebuttal described in *Woods* and *Trewin*. Thus, the dissent would reverse the trial court's ruling based on an argument that defendants are not actually making. That is a departure from our typical approach to decisions. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) (it is not our "proper function to make or develop a party's argument when that party has not endeavored to do so itself"). Accordingly, we do not reach the balance of the argument that defendants make concerning the proof at trial as to adverse use.

In sum, defendants' assertion that proof that a claimant used a roadway under the belief that he or she had the right to use it can never establish the sub-element of nonsubordinate use flies in the face of Oregon's application of the Restatement formulation of adverse use in section 458. Accordingly, we apply *Kondor* and *Sander* and turn to the sufficiency of the evidence, which defendants also challenge.

### 4. *Sufficiency of the evidence*

The trial court determined that plaintiff had established through clear and convincing evidence that he had used the road by claim of right and had not asked for, nor been given, permission from defendants to use the road on their property during the 10-year prescriptive period. We conclude that the record supports the trial court's findings.

Plaintiff testified that (1) he believed that he had a right to use the road based on the seller showing him the road as the means to gain access to the property, the road's existence and course through defendants' property and beyond for a significant distance until its end at his property, and his mistaken belief that certain easements over portions of the road also covered defendants' property; (2) he had regularly used the road since he acquired the parcels in 1998; and (3) he had never asked for nor was given permission to use the road on defendants' property. Defendant testified that he, and the other property owners, had a right to use the road for access and that Larson did not need his permission, although Larson also did not have an easement. Although defendant also testified that, if you do not have a written easement you go at the "goodwill and grace" of the owner, defendants behaved as if they believed that plaintiff, along with Larson and Woods, had a right to use the road through defendants' property, and the trial court found that permission was not actually given.

Thus, the trial court heard evidence from defendant and plaintiff concerning whether plaintiff's use was in subordination to defendants. And, for a number of good reasons, including the fact that defendant's trial testimony presented a new factual and legal twist that had never come up in defendants' pleadings or defendant's deposition, the trial court found defendant's testimony concerning permission to be lacking in credibility and accepted plaintiff's testimony.

The trial court did not commit legal error by considering direct evidence that plaintiff had not used the road in subordination to defendants, and we are bound by the trial court's express and implied findings concerning the factual dispute over whether plaintiff used the road by permission.

C. *Proof of 10 years of adverse use*

We also reject defendants' contention that, contrary to the trial court's finding, plaintiff did not establish 10 years of adverse use because he acted in subordination to defendants when he asked defendants to sign a written easement at a time when he had owned three of his parcels for slightly less than 10 years. Plaintiff, though, asked for a written easement from defendants (and the other property

owners along the roads) only to confirm his claimed rights in writing, as required by the county. Plaintiff's request did not end his claimed adverse use of the road; he continued to assert that he already had an established, legal right to use the road. *See Arrien,* 263 Or at 372 ("A willingness to purchase land from the servient owner does not, in itself, negate an adverse use."). There was no evidence that, following his request, plaintiff made his use subservient to defendants' rights. Accordingly, the evidence supports the trial court's finding of 10 years of adverse use of the road by plaintiff. Because all of the elements for a prescriptive easement were satisfied, we affirm the trial court's judgment.

Affirmed.

**LAGESEN, J.,** concurring.

I join fully in the majority opinion with the understanding that its discussion of the content of the "open and notorious" element of a prescriptive easement, *see* 269 Or App at 796-97, is *dictum.* I write separately for two reasons: (1) to elaborate on why the notice concerns raised by the dissent do not provide a basis for reversing the trial court's judgment under the circumstances present in this case; and (2) to highlight the fact that, in general, we no longer review *de novo* a trial court's determination as to the existence of a prescriptive easement, and to emphasize the significance of the applicable standard of review to my determination that the trial court's judgment should be affirmed.

A. *My understanding of the Oregon law of prescriptive easements*

Under Oregon law of prescriptive easements, a plaintiff seeking to establish a prescriptive easement generally must prove that the use for which the plaintiff seeks the easement had three characteristics: (1) the use must have been "continuous and uninterrupted" for the prescriptive period; (2) the use must have been "adverse to the rights" of the defendant; and (3) the use must have been "open and notorious." *Thompson v. Scott,* 270 Or 542, 546, 528 P2d 509 (1974).

The meaning of the element of "continuous and uninterrupted" is not in dispute in this case, and I therefore

do not discuss it further. With respect to the "adverse" element, a plaintiff's use of land is "adverse to the rights" of a defendant landowner if the use is under claim of right rather than by permission of the landowner. *See generally Feldman et ux. v. Knapp et ux.*, 196 Or 453, 467, 250 P2d 92 (1952); *see also Parrott v. Stewart*, 65 Or 254, 260-61, 132 P 523 (1913) (explaining that a use of land is adverse to the rights of the owner if the use is by claim of right rather than permission); *Kondor v. Prose*, 50 Or App 55, 60, 622 P2d 741 (1981) ("In the context of prescriptive easements, the requirement that the use be 'adverse' to the rights of the property owner means that the use is not in subordination to those rights.").

Under *Feldman*, the open and continuous use of land for the prescriptive period gives rise to a rebuttable presumption that the use was adverse.[1] 196 Or at 470-73. A servient landowner may then introduce evidence to rebut that presumption. *Woods v. Hart*, 254 Or 434, 437, 458 P2d 945 (1969). What a landowner must show to rebut the presumption depends on the nature of the particular use. In all circumstances, a landowner may rebut the presumption by affirmatively proving that the use was, in fact, permissive. *See McGrath v. Bradley*, 238 Or App 269, 274, 242 P3d 670 (2010);[2] *Wiser v. Elliott*, 228 Or App 489, 501-02, 209 P3d 337 (2009). However, in some circumstances, a landowner may rebut the presumption by presenting evidence that does not affirmatively prove that the use was permissive, thereby shifting the burden of proving actual adverse use back to the plaintiff. *Woods*, 254 Or at 437 (observing that, "[e]ven if the rebutted presumption is regarded as having some evidentiary value, it alone cannot preponderate in favor of plaintiff"); *see*

---

[1] This court sometimes misstates the presumption articulated in *Feldman* as being established by a showing of "open and notorious" use. *McGrath v. Bradley*, 238 Or App 269, 274, 242 P3d 670 (2010). In the future, we should take care to use the correct phrase because in the law of prescriptive easements, "open and notorious" is a term of art with a well-defined meaning. *See Restatement (First) of Property* § 458 comments h - k (1944) (defining "open and notorious" element of prescriptive easement).

[2] Of course, proof by the landowner that the use was, in fact, permissive does more than simply rebut the presumption that the use is adverse; it affirmatively disproves the element of adverse use, thereby defeating a plaintiff's claim for a prescriptive easement. *See Baum et ux. v. Denn et al.*, 187 Or 401, 405-06, 211 P2d 478 (1949) (finding that no adversity existed because the use "was merely permissive in character").

*also McGrath*, 238 Or App at 274 n 5; *cf. Sander v. McKinley*, 241 Or App 297, 306-07, 250 P3d 939 (2011) (if presumption of adverseness is not available to plaintiff, to obtain prescriptive easement, plaintiff must directly prove that use was adverse); *Nice v. Priday*, 137 Or App 620, 625, 905 P2d 252 (1995), *rev den*, 322 Or 644 (1996) (plaintiffs failed to prove that use was adverse where defendants rebutted presumption of adverse use and plaintiffs adduced no other evidence of adverse use); J. E. Macy, Annotation, *Easement by prescription: presumption and burden of proof as to adverse character of use*, 170 ALR 776, 790-91 (1947)[3]. For example, where a plaintiff seeks a prescriptive easement over a roadway, a landowner rebuts the presumption that the use is adverse by demonstrating that the roadway was either constructed by the landowner or is of unknown origin, and that the plaintiff's use of the road did not interfere with the landowner's use of the roadway. *Woods*, 254 Or at 437; *Trewin v. Hunter*, 271 Or 245, 247-48, 531 P2d 899 (1975); *McGrath*, 238 Or App at 274 n 5; *Chambers v. Disney*, 65 Or App 684, 689-90, 672 P2d 711 (1983). Proof of those circumstances rebuts the presumption that a use is adverse because those circumstances are more indicative of "a friendly arrangement between neighbors" than they are of a use under claim of right. *Woods*, 254 Or at 436-37. However, such proof does not necessarily result in a *de facto* showing of permissiveness or preclude a finding of adversity. *Id.*

With respect to the "open and notorious" element, a plaintiff's use of land is "open and notorious" if it is "such

---

[3] Macy describes the burden-shifting dynamic for the presumption of adversity as follows:

"The weight of reason and authority supports the proposition that the burden of proof as to the adverse nature of the use remains on the claimant throughout. Analogy with the claim of adverse possession, as well as general principles, require him to sustain the burden as to all the elements of prescriptive right. The presumption of adverseness which supports him in the first instance is a typical legal presumption. It is not a mere evidential inference, although that may lie back of it. It is one which requires a trial judge, when no evidence opposes it, to direct a verdict for the claimant. Being a typical legal presumption, it disappears when confronted with evidence of permission or license, leaving the issue as one of fact. And upon that issue the burden to support the allegation of adverseness by a preponderance of the evidence remains on the claimant."

170 ALR at 790-91.

that the landowner has a reasonable opportunity to learn of its existence and nature." *Thompson v. Schuh*, 286 Or 201, 211, 593 P2d 1138 (1979). In particular, the landowner must have had a reasonable opportunity to learn of the *adverse character* of the use, that is, "that [the plaintiff] claimed a prescriptive right" to the use. *Winters v. Knutson*, 154 Or App 553, 558-59, 962 P2d 720 (1998).

In most instances a showing that the landowner knew of the use, or had a reasonable opportunity to learn about the use, is sufficient to establish that the landowner had a reasonable opportunity to learn of both the fact of the use *and* its adverse character. However, in some circumstances a greater showing is required. *Restatement (First) of Property* § 458 comments h - k (1944) (describing how different circumstances affect what a plaintiff must prove to establish the "open and notorious" element of a prescriptive easement); *see also Thompson*, 270 Or at 548-49 (when use begins as permissive, prescriptive-easement claimant must show that landowner knew that claimant had repudiated permission in order to establish that use was "open and notorious");[4] *Hamann v. Brimm*, 272 Or 526, 529, 537 P2d 1149 (1975) (same); *Winters*, 154 Or App at 558-59 (where parties seeking prescriptive easement concealed adverse character of their use, fact that landowner was aware of use was insufficient to establish that use was "open and notorious"). In particular, as comment j to section 458 of the *Restatement (First) of Property* makes clear, in some circumstances, to establish that a use was "open and notorious," a plaintiff must prove that the defendant knew of the adverse character of the plaintiff's use.

---

[4] As we observed in *Winters*, in formulating the "open and notorious" element of a prescriptive easement, the Supreme Court has relied on the comments to the *Restatement (First) of Property* (1944) that discuss what it means for a use to be "open and notorious." 154 Or App at 559, 559 n 3. However, this court has relied on the comments to the *Restatement (Third) of Property* (2000) to support the proposition that, notwithstanding the word "and", we treat "open and notorious" as a disjunctive term with specific and separate definitions for each element. *See Montagne v. Elliot*, 193 Or App 639, 651, 92 P3d 731 (2004) (stating that "open and notorious" element of prescriptive easement, in reality, means "open or notorious"). I believe that that is an incorrect formulation of the term under Oregon law, to the extent that it conflicts with the old *Restatement*, which treats "open and notorious" as a legal term of art with a well-defined meaning. *See* 269 Or App at 796-97 (discussing the meaning of "open and notorious" based on the comments to the *Restatement (First) of Property* (1944)).

Although we have not explicitly addressed the issue (and, as explained further below, this case does not present the opportunity to do so), *Woods* suggests that one situation in which a plaintiff must prove that a landowner had actual knowledge of the adverse character of the use in order to prove the "open and notorious" element of a prescriptive easement is where the use is over an existing roadway in a manner that does not interfere with the landowner's use of the road or damage the road. That is because, as *Woods* recognizes, under such circumstances a landowner reasonably would assume that the landowner was being "neighborly" in permitting the use, not that the neighbor was using the road under claim of right; in other words, the fact of the use alone—and knowledge of that fact—would not, under such circumstances, put a landowner on notice that the character of the use was adverse.

B.  *Application to this case*

Applying the above standards to the present case, I would conclude that the trial court erred when it concluded that defendants had not rebutted the presumption of adverseness, because it applied the wrong legal standard in making that determination. In particular, the trial court applied the wrong legal standard when it found that plaintiff's use of the road "interfered" with defendants' property because defendants had to view vehicles traveling by their house on the road. As a matter of law, that sort of "interference" has no bearing on whether defendants rebutted the presumption of adverse use. Rather, to rebut the presumption in the context of an existing roadway of unknown origin, a landowner need only establish that the plaintiff's use of the road did not interfere with the landowner's *use of the road* (or damage the road). *Woods*, 254 Or at 437-38. Because we are not reviewing *de novo*, that legal error by the trial court ordinarily would require a remand to make the required factual findings (that is, the findings as to whether defendants proved that plaintiff's use of the road did not interfere with defendants' use of the road, and did not damage the road, thereby rebutting the presumption of adverse use) under the correct legal standard. Nevertheless, a remand is not required here because the trial court correctly concluded—based on the evidence presented and

defendants' concession in court—that plaintiff established the elements of a prescriptive easement.

First, defendants conceded in their trial memorandum before trial that the "open and notorious" element of a prescriptive easement was met in this case: "Defendants concede that plaintiff has used the roadway open and notoriously. Defendants dispute that plaintiff's use has been adverse and dispute that plaintiff's use, if adverse, has been so for the requisite 10-year period." The trial court—appropriately so—relied on that concession in determining that plaintiff had established the elements of a prescriptive easement. Second, for the reasons stated in the majority opinion, the evidence in the record is sufficient to support the trial court's factual findings that the other two elements for a prescriptive easement are satisfied: (1) that plaintiff's use was adverse to defendants' rights (that is, under claim of right rather than by permission); and (2) that the adverse use was continuous for long enough to give rise to a prescriptive easement.

The question of adverseness is a close one for me, albeit not for the same reasons that it is a close question for the dissent. In some of our previous cases we have concluded on similar evidence that prescriptive-easement claimants have not demonstrated that a use was adverse; we have even found that such evidence demonstrated affirmatively that a use was permissive. *See Nice*, 137 Or App at 624-25 (on *de novo* review, finding that defendants rebutted presumption of adverse use and plaintiffs failed to prove adverse use where claimed easement was based on use of road in common with others and where defendants had put gate up on road but gave plaintiffs a key); *see also Bridston v. Panther Crushing Co., Inc.*, 206 Or App 178, 184-85, 136 P3d 84 (2006). In particular, in *Bridston* we found—again on *de novo* review—that a party's use of a road was permissive on facts similar to those present here: (1) the landowner had put up a gate across the road and given the user a key; (2) where the party used the road in common with others; and (3) where the party had assisted in the maintenance of the road. *Id.* However, in those cases we reviewed *de novo* and were ourselves acting as factfinders, charged with weighing

the evidence and determining for ourselves whether we were convinced by the evidence that the use was under a claim of right, rather than permissive. Now, however, we review *de novo* a trial court's determination that a party has proved a claim for a prescriptive easement only in exceptional circumstances, ORS 19.415(3)(b) and ORAP 5.40(8)(c), and we have not elected to conduct *de novo* review in this case. As a result, we are bound by the trial court's factual finding that plaintiff's use of the road was under a claim of right, rather than by permission, if there is any evidence to support that factual finding. 269 Or App at 787. There is such evidence here. That evidence, viewed in the light most favorable to the trial court's determination, shows that plaintiff used the road under the belief that he had the right to use the road, that plaintiff did not ask for permission to use the road and defendants did not give permission to use the road, and that defendants themselves, like plaintiff, believed that they had the right to use the road over other neighbors' properties. From that evidence, the trial court reasonably could infer that plaintiff's use of the road was under claim of right and not by virtue of defendants' permission.[5]

The dissent contends that the evidence is insufficient to support a factual finding that plaintiff's use of the roadway was adverse because, in the dissent's view, the evidence is insufficient to support a factual finding that defendants were on notice of the adverse character of plaintiff's use. 269 Or App at 823-43 (DeVore, J., dissenting). From that, the dissent reasons that the majority has adopted a "subjective theory of adverseness" that will result in the granting of prescriptive easements in circumstances in which the servient landowner was not given fair warning that a use of a road might ripen into a prescriptive easement.

I tend to agree with the dissent that the evidence would not support a factual finding that defendants were on

---

[5] I do not believe that the trial court's inference that plaintiff's use was under claim of right and not permissive is the *only* reasonable inference that can be drawn from the evidence in this case; on this record, had the trial court inferred that plaintiff's use was permissive, I believe that we would be bound to uphold that factual finding as well, absent a decision to engage in *de novo* review. Put simply, different reasonable factfinders could view the evidence in this case in different ways.

notice of the adverse character of plaintiff's use of the road. However, that does not suggest that the majority's formulation of the "adverse" element of a prescriptive easement is wrong. Whether defendants were on notice of the adverse character of plaintiff's use of the road does not bear on whether that use was by claim of right. Instead, the absence of notice bears on whether the use was "open and notorious,"[6] and, to obtain a prescriptive easement, a plaintiff will have to show that the owner of the servient estate had whatever notice of the adverse character of the plaintiff's use was required under the circumstances of the case. *See Winters,* 154 Or App at 558-59.

As I noted above, *Woods* suggests that under the circumstances present here, a prescriptive-easement plaintiff may need to prove that the servient landowner had actual knowledge of the adverse character of the plaintiff's use in order to prove that the use was "open and notorious." However, in the light of defendants' express written concession in the trial court that plaintiff's use of the land met the "open and notorious" element of a prescriptive easement (a concession that, in my view, relieved plaintiff of the obligation to further develop the evidence on that element), this case does not present the opportunity for us to address the scope of the "open and notorious" element of a claim for a

---

[6] The dissent relies on comment j to section 458 of the *Restatement (First) of Property* for the proposition that the lack of notice as to the character of the use bears on the determination of whether the use itself is adverse. 269 Or App at 828-29 (DeVore, J., dissenting). That comment states, in pertinent part: "[w]here a user of land and one having an interest affected by the use have a relationship to each other sufficient in itself to justify the use, *the use is not adverse* unless knowledge of its adverse character is had by the one whose interest is affected." *Restatement* § 458 comment j (emphasis added). Notwithstanding the emphasized wording, it is clear from the context of the comment that it is referring to what must be shown to establish the "open and notorious" element of a prescriptive easement, and not to what must be shown to establish that a use is "adverse" as that term is employed in the Oregon cases. First, the comment is titled "Open and notorious use—Special relationship." *Id.* Second, as the majority opinion explains, the *Restatement* defines "adverse" more broadly than the Oregon cases define the term. 269 Or App at 795 n 3. Under the *Restatement* formulation, to qualify as "adverse" a use must be "open and notorious," among other things. *Id.* at 795. Accordingly, under the *Restatement* definition of "adverse", a use that is not "open and notorious" can never be "adverse." By contrast, under Oregon law, the question of whether a use is "adverse" is distinct from the question of whether it is "open and notorious." As the majority also explains, Oregon's definition of "adverse" equates to the nonsubordination element of the *Restatement's* definition of "adverse." *Id.* at 795.

prescriptive easement for use of an existing road across a neighbor's property.

With those considerations, I concur in the majority opinion.

Sercombe, J., joins in this concurrence.

**DEVORE, J.,** dissenting.

This case offers the chance to eliminate or to exacerbate confusion in the law of prescriptive easements. Here, a well-established line of cases collide with what will become a new line of cases. The conflict requires this court to decide whether the law will continue to require that, in order to claim a prescriptive easement over preexisting roads of unknown origin, the claimants must show that their use *interfered* with the owner's use of the road, so as to prove the requisite open, notorious, and adverse use. The majority opinion offers a nascent alternative that will render the long-established rule immaterial. The alternative posited is that the court will now recognize a claimant's testimony about a prior, unexpressed, and subjective belief in the claimant's right to use a road as sufficient evidence—indeed, as so-called "direct evidence"—of open, notorious, and adverse use of preexisting roads of unknown origin. The result of this subjective theory of adverseness will be to tacitly overrule eight cases in concept and in practice.

Fearing this alternative to be ill-founded, I respectfully dissent. To explain why, this dissent (1) revisits the facts, (2) recalls the rules on preexisting roads, (3) compares how the parties and the majority grappled with the issues presented here, (4) questions the theory that a subjective belief constitutes "direct evidence" of adverse use of preexisting roads, (5) observes how this case conflicts in concept and in practice with established cases on prescriptive easements, (6) suggests how the law should apply to this case, and (7) concludes with a hope that the conflict between neighbors and between cases might be resolved.

## I. FACTS

Plaintiff bought three parcels of land in December 1998 that are reached by Lewis Creek Road.[1] Plaintiff testified

---

[1] A fourth parcel is not at issue on appeal, because it was purchased in 2006 with too little time to support prescriptive use.

that he could not remember any conversations with his seller about the road access. He admitted that he had noticed a disclaimer that appeared on the face of each of his three deeds, warning, "This property does not have access to or from a legally dedicated street, road or highway and access therefore cannot be insured." Plaintiff is not the only person served by Lewis Creek Road. It passes through defendants' property, Larson's property, public land, Woods' property, and more public land before reaching plaintiff's parcels. Before his closing, plaintiff had seen purchase documents that included written easements over the Larson and Woods properties, but he did not check to which sections of the road the easements applied. When plaintiff inquired about it, the title company said that it could not give legal advice. Plaintiff choose to assume that the two easements overrode the deeds' warning and gave him uninterrupted access to his properties. Plaintiff's use of the properties during the relevant years was limited to recreational use in the summer time. One of his parcels had an old cabin, which he improved.

Lewis Creek Road has existed since at least 1934. Plaintiff admitted that he had not built the road over defendants' property, and he did not know who did. The neighbors shared the cost and tasks of maintaining the road. One neighbor oversaw things, asking others to help. Defendant Le Roy Hippe performed maintenance over his property, cutting brush, filling potholes, and cleaning the ditch. Plaintiff has dragged iron behind his pickup to grade the road; and, after asking defendant Hippe's permission, plaintiff trimmed branches on defendants' property along the road. In the last few years before trial, defendants have had a chain across the road as it enters their property, but the chain is usually down or down while defendants were home. Defendants have given keys to the chain's lock to plaintiff as well as the Larsons, UPS, FedEx, and the power company.

Plaintiff testified that, prior to 2009, he had never had any discussions with defendants about his use of the road across their property. In 2008, less than 10 years after his purchase, the county told plaintiff that, in order to get a building permit for a house, he had to have written

easements to reach his property. In May 2008, plaintiff wrote to defendants' brother (in interest) to ask for a written easement, while simultaneously asserting that he already had a right to use the road by reason of a prescriptive easement, an implied easement, and a statutory way of necessity.[2] Defendants have not and do not object to plaintiff's use of the road. Because they preferred that future use be permissive use, they declined to grant a written easement. Their refusal prompted this suit.

## II. PREEXISTING ROADS

The principles surrounding prescriptive easements are well-established. First among them is the reminder that "[e]asements by prescription are not favored by the law[.]" *Wood v. Woodcock*, 276 Or 49, 56, 554 P2d 151 (1976). Second, clear and convincing evidence is required when claimants seek to prove the elements of a prescriptive easement. To prove those elements, claimants must show "that they or their predecessors used the roads in an open, notorious, adverse, and continuous manner for a period of ten years." *Webb v. Clodfelter*, 205 Or App 20, 26, 132 P3d 50 (2006) (citing *Thompson v. Scott*, 270 Or 542, 546, 528 P2d 509 (1974)). The first two fundamentals will become important when we turn to the requirements for open, notorious, and adverse use as applied to preexisting roads. And, those two fundamentals will be significant in recognizing a conflict between old and new lines of cases. 269 Or App at 836-40 (DeVore, J., dissenting).

In the varied situations that arise, there are many ways in which a claimant may demonstrate adverseness in making use of another's land. There is indeed no single way in which adverse, overt, and physical use of another's land might be manifested. Contrary to the majority's reading, this dissent and the defendants do not contend that an easement claimant can only rely on the presumption of

---

[2] An implied easement presupposes a set of circumstances beginning with a common grantor of plaintiff's and defendants' properties, a fact that this situation lacked. *See Thompson v. Schuh*, 286 Or 201, 211-12, 593 P2d 1138 (1979) (denying easement by prescription and by implication). A way of necessity requires a court proceeding and a favorable judgment, which had not happened. *See* ORS 376.150 - 376.200 (petition and proceedings for ways of necessity).

adverseness from use of a road.[3] Examples of the many ways to demonstrate an adverse claim range from a claimant who builds a new road on another's land to a claimant who dams a seasonal creek so as to flood the meadow of an upstream neighbor. *See, e.g., Montagne v. Elliott*, 193 Or App 639, 653, 92 P3d 731 (2004) (physical deviation from written easement for street); *Arrien v. Levanger*, 263 Or 363, 373, 502 P2d 573 (1972) (flooding as prescriptive use). Merely traveling over an existing road on occasion, however, is not nearly so overt and physical, nor open, notorious, and adverse, as a claimant building a driveway across a neighbor's lot or as establishing a trail of tire tracks across a neighbor's fields. *See Feldman et ux. v. Knapp et ux.*, 196 Or 453, 250 P2d 92 (1952); *R & C Ranch, LLC v. Kunde*, 177 Or App 304, 33 P3d 1011 (2001), *modified on recons*, 180 Or App 314, 44 P3d 607 (2002) (road becoming tire track trail across field).

When the prescriptive claim involves simply the *use* of a road and no other demonstrable evidence of adverseness, Oregon's cases provide a rule that yields one or another answer, depending upon whether the roads were preexisting. The long-standing rule has been expressed in this way:

> "It is generally said that the open and continuous use of a road for the prescriptive period is presumed to be adverse and under a claim of right. It is further generally said that the servient owner has the burden to rebut the presumption.
>
> "When the road is *preexisting*, however, and the claimant's use is *nonexclusive*, that presumption may be rebutted by proof that the claimant's use of the road did not *interfere* with the servient owner's use of the road."

*Webb*, 205 Or App at 26-27 (citations omitted; emphases added). Ordinarily, the use of the road will be presumed to be adverse, unless the servient owner proves that the use was permissive. But, if it is known that the owner built the road or if the road is of unknown origin, then mere use is not adverse. That use is no longer "adverse and under a claim of right." To show open, notorious, and adverse use of a road

---

[3] The dispute is whether a claimant's later testimony about a prior, unexpressed, subjective belief can suffice as direct evidence to prove an open, notorious, and adverse claim, in a context in which travel over a preexisting road does not suffice to prove an open, notorious, and adverse claim.

of unknown origin, the claimant must show that the claimant's use of the road *interfered* with the owner's use of the road. *Id.* The importance and reasons for this standard are reflected in a line of cases from the Oregon Supreme Court and continuing through decisions of the Court of Appeals.

The Oregon Supreme Court explained the significance of preexisting roads in *Woods v. Hart,* 254 Or 434, 436, 458 P2d 945 (1969). In that case, the roadway had been in existence before either the defendants or the plaintiffs acquired their lands. The plaintiffs used the defendants' road, and the defendants knew it. If the plaintiffs had built the road without asking, the court noted, then the use would have been adverse. *Id.* But, like our facts here, the most that could be said was that the plaintiffs shared in the work and expense of maintaining the road. *Id.* The court observed that helping with maintenance does not assert a right to the road, because it is equally possible that the money and work was compensation to the owners for the privilege of using the road. Offering the reason for our rule on preexisting roads, the court declared:

> "Where one uses an existing way over another person's land and nothing more is shown, it is more reasonable to assume that the use was pursuant to a friendly arrangement between neighbors rather than to assume that the user was making an adverse claim."

*Id.* Even if the normal notion were imagined—that a presumption of adverseness arises when crossing another's land—"the fact that the claimant's use is of an existing way and the use *does not interfere with the owner's use*" would "rebut the presumption of adverseness." *Id.* at 437 (emphasis added).

> "'[T]he fact that [an owner] sees his neighbor also making use of [the road] under circumstances that in no way injures the road, or interferes with his own use of it, does not justify the inference that he is yielding to his neighbor's claim of right or *that his neighbor is asserting any right.* It signifies only that he is permitting his neighbor to use the road * * * "in a neighborly way."'"

*Id.* at 437-38 (quoting *Anthony v. Kennard Bldg. Co.*, 188 Mo 704, 723-24, 87 SW 921 (1905)) (emphasis added). The court

was pragmatic: To see a neighbor travel over a road, without interfering with the owner's use, does not alert the owner that the neighbor may harbor an adverse claim of right to use the road. The court affirmed the decree refusing the prescriptive claim. *Id.* at 438.

The Supreme Court has made the rule plain in other decisions. In *Trewin v. Hunter*, 271 Or 245, 531 P2d 899 (1975), there was recent adverse use, but not for a sufficient period of 10 years. Before the recent adverse use, the plaintiffs had used the roadway over the defendants' land and had never asked permission. The defendants did not object to the use, but they were not shown to have actually given permission. Citing *Woods*, our state's high court concluded:

> "It is our opinion that when a road is used in common by the dominant and servient owner and there is no evidence to establish who constructed the road, *it should be presumed* that the servient owner constructed it for his own use."

*Id.* at 247-48 (emphasis added). Another decree refusing a prescriptive use was affirmed.

Again, in *Boyer v. Abston*, 274 Or 161, 544 P2d 1031 (1976), the Supreme Court affirmed another judgment rejecting a prescriptive claim, observing that the road's "origin is unknown" and that "plaintiffs and their predecessors did not use the road so as to injure it or interfere with defendants' use." *Id.* at 163. Decisions of the Court of Appeals have been in accord, following the same principles. *See, e.g., Read v. Dokey*, 92 Or App 298, 758 P2d 399 (1988) (reversing judgment for prescriptive easement over a road in common use of unknown origin); *Hayward v. Ellsworth*, 140 Or App 492, 915 P2d 483 (1996) (reversing judgment for prescriptive easement involving informal center road built by original owner of all lots).

Oregon's rules on roads—both the general rule and its counterpoint—are paralleled in the commentary to today's more recent *Restatement*:

> "In states following the majority rule, *particular fact situations overcome the presumption of prescriptive use,* creating a counter-presumption that the initial use was

permissive. * * * *Evidence that the use was made in common with the owner of the land,* or that the road over which a right of way is claim was constructed by the owner for his own use, may also overcome the presumption of prescriptive use."

*Restatement (Third) of Property (Servitudes)* § 2.16 comment g (2000) (emphases added).

Because Oregon understands a cooperative use of roads of unknown origin to be a permissive arrangement, it inescapably follows that, in order to demonstrate an open, notorious, and adverse use, a claimant must show the claimant's use to interfere with the owner's use of the road. That is so because our rule on preexisting road parallels the same sort of requirement for proof of adverseness when permission was previously granted. *See Hamann v. Brimm,* 272 Or 526, 537 P2d 1149 (1975) (to repudiate permission, claimant must show a use of a different character and the owner must have a reasonable opportunity to learn of the repudiation).

Curiously, the first Oregon case on which the majority relies to show the court's reference to the old *Restatement* is a case illustrating the importance of showing interference in this parallel situation. In *Thompson v. Scott,* 270 Or 542, 528 P2d 509 (1974), the plaintiffs claimed a prescriptive easement across the defendants' meadow to reach their timberland. Before a common property was split, the predecessor of the plaintiffs and the defendants had hired the plaintiffs to haul logs out of a timbered area of the property. That area was later sold to the plaintiffs who asserted a prescriptive right to the road to their property. Because the initial use was permissive, something more than ordinary use was required to alert the defendants to an adverse claim. The Supreme Court explained:

"When the use of the servient owner's land is permissive at its inception, the permissive character of the use is deemed to continue thereafter unless the repudiation of the license to use is brought to the knowledge of the servient owner. This principle is stated in [*Restatement of Property* § 458 comment j (1944).]"

*Thompson,* 270 Or at 548-49. To alert the owner that the permitted use is changed to an adverse use, "'the claimant

is required to prove the new and different character of the continued use very clearly.'" *Id.* at 549. In *Thompson*, the defendants knew the plaintiffs were using the road, but the character of their use—visiting rural land infrequently—was "little or no warning of an adverse claim." *Id.* at 551. To like effect, the Supreme Court rejected a prescriptive claim in *Hamann*, 272 Or at 526, where there was no change in the claimant's use that would have alerted the owners to an adverse claim.

In both the situation involving preexisting roads with assumed permission and the parallel situation involving prior, express permission, our courts have found one other fact to be noteworthy: A claimant who shares access with a number of other users, and has given no other demonstrable evidence of adverseness, is less likely to demonstrate adverseness by such shared use. In *Thompson*, the court added:

> "Another fact militating against treating plaintiffs' use as adverse is the non-exclusive character of plaintiffs' use. Plaintiffs themselves introduced evidence establishing that the road was used by others for a variety of purposes, including the hauling of logs, the hauling of hay, the movement of farm equipment, and for hunting. It has been said that * * * '[i]f the claimant is only one of two, or several, or many, who make the user in question, it is perhaps inferable that all of these uses are permissive. In such a case the claimant must affirmatively prove the adverse character of his behavior.'"

270 Or at 551 (quoting 3 *Powell on Real Property* ¶ 413, p 483 (1973)). This recognition is consistent with the principle expressed by the Supreme Court as to preexisting roads that, when nothing else is shown, shared use of a preexisting road among a number of users will be understood to be a "friendly arrangement between neighbors." *Woods*, 254 Or at 436; *Trewin*, 271 Or at 247-48; *Boyer*, 274 Or at 163-64.

A better claim could be made if a claimant were the sole user who establishes a two-track trail across a neighbor's field. *See R & C Ranch, LLC*, 177 Or App at 313. The fact that plaintiff, here, used the road across defendants'

property in common with others, and used the road no differently than did neighbors Woods and Larson, underscores the principle that use of a preexisting road is itself not adverse, may be understood as a neighborly arrangement, and requires the claimant to show demonstrable or open and notorious adverseness in some other form—that is to say, interference with the owners' use of the roads. *See Thompson*, 270 Or at 551.

The same circumstance was presented in *Webb*, 205 Or App at 20. In a like rural setting, the defendants owned land crossed by the road that served outlying neighbors. Midway along the road, a neighbor Prock owned land through his pension fund. At the far ends of the road system, the plaintiffs owned three parcels. The road existed longer than anyone remembered, and, except for a cut-off road (not relevant here), no one knew who had built the road system. Everyone used the roads in earlier years for moving farm equipment, and, in later years, for hunting or personal uses. The defendants lived on their land and never objected to the plaintiffs' use of the roads. Conflicts surrounded the plaintiffs' guests, a hunting club, whom the defendants believed frightened wildlife, brought in noxious weeds, crossed freshly seeded ground in the fall, and rutted wet roads. The defendants granted permission for the plaintiffs to accompany their paying hunters on the road to the plaintiffs' parcels. The arrangement deteriorated in years too-recent when the defendants found a locked gate had been forced open. The trial court granted the plaintiffs' claim for a prescriptive easement.

This court acknowledged that ordinarily use of the road would be "presumed to be adverse and under a claim of right." *Id.* at 26 (citing *Feldman*, 196 Or at 473). Where, however, the roads are preexisting and of unknown origin, and claimants' "use is nonexclusive," mere use does not show adverse use. *Id.* at 27. We summarized the factors by which a presumption of adverse use is defeated, quoting an earlier case:

> "'Where, as here, (1) a road is used in common by the owners of a putative servient estate and by others; (2) there

is no evidence to establish who constructed the road; and (3) the evidence does not establish that the common use interfered, for the requisite period, with the servient owner's use, the claimants of prescriptive rights have not carried their burden of proof.'"

*Id.* (quoting *Petersen v. Crook County*, 172 Or App 44, 53, 17 P3d 563 (2001)).

*Webb* foreshadowed this case. We recognized the claimants were firmly convinced of their own belief in their right to use the roads. We acknowledged the claimants' argument "that club members did not seek out [the] defendants' permission to use the roads because they did not believe they needed it." *Id.* at 28. But there was no overt demonstration of the plaintiffs' belief. Referring to the relevant period, we observed, "There is not evidence of a single hostile encounter between hunting club members and [the] defendants between 1977 and 1995." *Id.* at 29. What was shown was not enough to establish adverse use of a neighbors set of preexisting roads. Focusing on what is needed for adverseness, we added, "More importantly, despite causing wear to roads and damage to locks and gates, plaintiffs never interfered with defendants' own use [of the roads]." *Id.* We concluded that the plaintiffs' use of the preexisting roads, bereft of any presumption of adverseness and supported only by their belief that they did not "need" permission, failed to establish a prescriptive easement. *Id.* We reversed the judgment for the claimants.

We recognized another friendly arrangement as to a road of unknown origin in *Skidmore v. Clark*, 205 Or App 592, 135 P3d 367 (2006), which shares some facts with the case at hand. There, too, we required that the claimants demonstrate that their use "interfered" with the servient owners' use of the roads. Like defendants in our case here, the owners or predecessors had given the plaintiffs' predecessor a key to the lock on the road's gate, or they had allowed the plaintiffs' predecessors to add their own lock. As in *Webb*, there was some testimony about ruts in the road, which damage the plaintiffs denied. Like defendants in our case here, a plaintiff trimmed back trees and bushes. Nevertheless, we noted, "Oregon courts have consistently held that maintenance is more indicative of a friendly

agreement than it is of adversity." *Id.* at 598. Finding little more than ordinary use of preexisting roads and "no evidence of adverse use," we reversed the judgment for the claimants. *Id.* at 599.

In *Insko v. Mosier*, 235 Or App 451, 234 P3d 984 (2010), we confronted the notion that a claimant's subjective belief was affirmative evidence of adverseness. An early owner had deeded to the defendants' predecessor a strip of land for east and west access between a county road and the land of the defendants' predecessors. The defendants' predecessors had developed the road in dispute. The plaintiff's father and mother had bought landlocked land that lay immediately south of the road strip. Like plaintiff in our case at hand, the plaintiff's father, when buying the land, had thought that his deed included the access strip. Fences lined both sides of the access road, and the plaintiff's fence encroached along the defendants' access strip. For a couple of weeks in each of two years, the plaintiff had fenced off the access strip in order to enclose yearling cattle within the strip. The plaintiff and his parents made open and continuous use of the road for farming access to their field, and they had never asked permission. Some of their use caused damage to the road, for which the trial court would award the defendants money damages. Trial testimony included evidence of statements the plaintiff's father had made over the years to neighbors that he owned the disputed strip or had an easement over it. Finding the evidence was sufficient, the trial court granted a judgment recognizing a prescriptive easement.

We reversed, focusing on a critical element needed for a prescriptive easement over a preexisting road. We explained that "the case turns on the question of interference." *Id.* at 455. We rejected the argument that the encroaching fence showed interference, because there was "no evidence that the fence encroached on *the road*." *Id.* at 459 (emphasis in original). We rejected the argument that blocking the road for two weeks in each of two years was interference, because it did not continue over 10 years, and the plaintiffs did not do so when the defendants' predecessors would return to their property. We rejected the argument that the plaintiff's use had actually caused compensable

damage to the road, because "damage to a road alone will not support a finding of interference if the damage did not *actually interfere* with the *owner's use.*" *Id.* (citing *Webb*, 205 Or App at 29) (emphases added). And, finally, we rejected the fact that the plaintiff's predecessor over the years had objectively manifested his belief in his ownership or legal right to use the road by making statements to neighbors. Referring to adverse possession, we explained, that, with a prescriptive easement, it is not necessary that the claimant intended to assert ownership. Instead, a prescriptive easement turns on "*'the manner in which the property is used*[.]'" *Id.* at 460 (quoting *Wiser v. Elliott*, 228 Or App at 489 (emphasis in *Insko*). Specifically, we rejected the suggestion that the plaintiff's subjective belief in his claim could make ordinary use become adverse use. We emphasized:

> "Contrary to the implication of plaintiff's argument, the question of adverse use *does not depend on the claimant's subjective intentions* with regard to the disputed road; the question of adverseness turns on whether the property was *actually used <u>in a manner</u> that was inconsistent with the owner's use.*"

*Id.* (emphasis and underscoring added). The essential quality of adverseness lies, not in a "subjective intention," but in the claimant's demonstrable "manner" of use that is "inconsistent with the owner's use" of the road. We reversed and remanded for entry of a judgment for defendants. *Id.*

## III. GRAPPLING WITH THE ISSUES

If the law of prescriptive claims to preexisting roads governed this case, then there should be little doubt that our conclusion is controlled by the Supreme Court decisions in *Woods*, *Trewin*, and *Boyer* and our decisions in *Read*, *Hayward*, *Webb*, *Skidmore*, and *Insko*. Defendants presented the issue squarely, and, contrary to the majority, 269 Or App at 800-01, this dissent does not raise an issue that defendants failed to raise.[4] Defendants argued in their briefs that plaintiff needed to prove plaintiff's use interfered with defendants' use of the road. In plain language, defendants

---

[4] What the dissent does do is explore conflict between defendants' authorities and those that seem contrary. That task is the obligation of any court when an issue is presented.

literally underscored their point, "<u>Thinking you have a right to use a road is not sufficient by itself</u>." (Underscoring in original.) Defendants cited and argued *Wood, Trewin,* and *Boyer*, as well as *Read, Hayward, Webb, Skidmore*, and *Insko.*

Like the property owners in other cases of preexisting roads, *see, e.g., Woods*, 254 Or at 436, defendants knew plaintiff was using the road in an ordinary way.[5] In that sense, defendants recognized in their first trial memorandum that plaintiff "used the roadway open [*sic*] and notoriously." In opening statement, defense counsel said that plaintiff's use gave plaintiff a presumption. He allowed, "[W]e think he's got that *presumption* going in." (Emphasis added.) As a consequence, he continued:

> "[I]t's up to Defendants to rebut that with—by showing that his use was of an *existing* road, *did not interfere* with Defendants' use of the road—and it was *not exclusive* * * * And if Defendants can rebut those three pieces, he [plaintiff] still has to come up with some other way to prove adversity by clear and convincing evidence."

(Emphases added.) Those were three keys recited in *Webb*, 205 Or App at 27 (quoted 269 Or App at 815 (DeVore, J., dissenting)), and they were also quoted in the same trial memo.

To construe defendants' recognition of "open and notorious" travel as an unwitting legal concession that defendants knew or had reason to know of plaintiff's adverse claim (*i.e.*, so-called adverseness reduced to "use not in submission") is to attribute a meaning that defendants did not intend and should not now be understood to have conceded. Viewed in context, defendants' counsel wrote and said that plaintiff must show interference or come up with some way other than mere travel to prove open, notorious, and adverse use. In this situation, defendants insisted, plain travel was not adverse. By frankly saying that plaintiff's travel was "open and notorious," defendants were not conceding half the

---

[5] Plaintiff's counsel did not try to misconstrue defense counsel's candor about known travel. Plaintiff's counsel recognized "that the issue that the Defense makes [is] that there wasn't open and notorious and hostile or adverse use."

battlefield in an ordinary claim for a prescriptive easement. Defendants were saying that this is no longer an ordinary claim for a prescriptive easement. Because circumstances are different, plaintiff must now prove something more than known travel. Defendants were telling the trial court that plaintiff could not succeed by proving an ordinary claim (*i.e.*, simply traveling over the road without subordination to the owner) where the context of a preexisting road requires something significantly different. In other words, in a case of preexisting roads in common use, *the paradigm shifts*.

Defendants' cases, like the parallel cases of *Thompson* and *Hamann*, explain that when roads are preexisting, ordinary use does not suffice as open, notorious, and adverse use. They explain why a plaintiff must show interference with the owner's use of the road or demonstrate some change in the character of the claimant's use, in order to bring to the owner's attention that the claimant's use is no longer friendly. By implication or expressly, those cases reject the proposition that a claimant's later testimony about an earlier, subjective, and unexpressed "claim of right" somehow constitutes any evidence, let alone "direct evidence" fully sufficient by itself to prove adverse use of roads of unknown origin. *See, e.g., Insko*, 235 Or App at 460. Even when the claimant's subjective belief is objectively manifested during the prescriptive period in statements made to neighbors, a subjective belief cannot serve to recharacterize mere travel over preexisting roads as adverse use.

Our majority opinion acknowledges *Woods* and *Trewin*, but misses their significance. The majority "cabins" them as relevant only to presumptions. The majority does not mention *Webb* or *Insko*, on which defendants principally relied. The majority explores none of the reasons why our case law requires, as proof of open, notorious, and adverse use, something during the prescriptive period that is demonstrably more than ordinary use of preexisting roads, or why the Supreme Court and Court of Appeals would have erred repeatedly in requiring interference. The majority does not respond directly to defendants' reliance on these cases, nor do we consider them of any relevance to the prospect of an alternate theory of subjective proof of adverseness.

Instead, the majority deems defendants and this dissent to have failed to cite anything that prevents an alternate theory of adverseness (*i.e.*, belated testimony about an earlier, unexpressed, subjective belief); the majority says that defendants gave too narrow of an explanation of *Kondor v. Prose*, 50 Or App 55, 622 P2d 741 (1981); and the majority sees the dissent's explanation of *Sander v. McKinley*, 241 Or App 297, 250 P3d 939 (2011), which follows, as a wholesale rejection of the decision, rather than a reconciliation of it with established principles. 269 Or App at 826. The majority faults these seeming failures, while failing to recognize that defendants' authorities discredit the theory that an unexpressed, subjective belief suffices to transform unremarkable travel into adverse use. The majority sidesteps defendants' authorities, because there seems to be an easy and alternate theory of adverseness that renders defendants' authorities immaterial.

If the criticism were redirected, the majority would be quite right to observe that more could have been said to examine today's issue—by *both* parties. At trial and on appeal, the parties predictably spent most of their energies arguing about the conflicting evidence of express permission. Although the trial court did posit an alternate theory of adverseness, citing *Kondor*, the successful plaintiff, curiously, did not cite or argue *Kondor* at all in his brief on appeal in support of his judgment. Even the trial court did not cite *Sander*, which is arguably a better case for an alternate theory of adverseness, and which was decided eight months before the trial court's judgment. In his brief, plaintiff did not cite *Sander*, either. Put in context, the majority opinion has done more to develop a subjective theory of adverseness than defendants ever had a chance to see in their opponent's brief.

Defendants did cite and distinguish *Kondor*, treating the decision as misconstrued by the trial court. As, however, the majority opinion reflects, an alternate theory of adverseness appears to be developing. In light of *Sander*, which neither plaintiff nor the trial court mentioned, the prospect of a subjective theory cannot be discounted in a paragraph, as defendants might have hoped. Although

defendants could not have anticipated the majority's opinion, precognition would have helped little, because, despite the majority's claim, an alternate theory of adverseness is not rooted in the *Restatement (First) of Property*, nor in the cases of the Supreme Court. The theory that a subjective belief or a "lack of subordination" is direct evidence—and itself fully sufficient proof of open, notorious, and adverse use—is a relatively recent conception appearing in our own work, particularly in *Sander*, a case which could be better explained in other terms. It is a theory that does not stand up well on its own, nor against the established law involving preexisting roads.

## IV. EVOLUTION OF A MISCONCEPTION

### A. *The Old Restatement*

The majority traces its analysis upstream to the *Restatement (First) of Property*. Summarizing the law as it was understood in 1944 as to most situations, the *Restatement* introduced the concept that an easement is prescriptive, "provided the use is (a) adverse, and (b) for the period of prescription, continuous and uninterrupted." *Restatement (First) of Property* § 457 (1944). The *Restatement (First)* described adverse use as requiring several components, to wit:

"A use of land is adverse to the owner * * * when it is

"(a)   not made in subordination to him, and

"(b)   wrongful, or may be made by him wrongful, as to him, and

"(c)   open and notorious."

*Restatement (First)* at § 458. Although Oregon speaks of "open and notorious use" as a separate element of a prescriptive easement, *Thompson*, 270 Or at 546, the old *Restatement* combines "open and notorious" as one of three components of adverse use. Ordinarily, the difference should matter little, so long as the "open and notorious" prerequisite is not dropped out of consideration of adverse, prescriptive use.[6]

---

[6] As the dissent will note later, the "open and notorious" aspect of adverse use suffers in the majority's formulation of adverse use. 269 Or App at 836, 838 (DeVore, J., dissenting).

The concept of a mistaken "claim of right" is itself not a described component in the primary text of section 458 in of the old *Restatement* formulation of adverse use. Instead, the term appears in commentary as an optional possibility pertaining to the first component, which requires that a claimant show that the use was "not made in subordination" to the owner. Use in subordination would defeat a claim. To ask for permission to use a road shows subordination to the owner. For example, although "A" uses a pathway across Blackacre, even telling third persons at various times that he has an easement, "A" asks the owner for permission. Such use would not be found adverse. *Id.* at comment c (illus 1). A "claim of right" is one way by which a person may show that the use was "not made in subordination" to the owner. But a "claim of right" is not always necessary. "[I]t is not necessary in order that a use be adverse that it be made either in the belief or under a claim that it is legally justified." *Id.* at § 458 comment d. A person could build a road or dig a mine on another's land, while knowing that there was no right and asserting no right and, yet, the physical acts would demonstrate the use was "not made in subordination" to the owner. *Id.* at § 458 comment c (illus 2).

That said, a "mistaken claim of right" or a lack of subordination does not wholly satisfy all the components of adverse use under the old *Restatement* formulation, because, by itself, it does not satisfy the second component of wrongfulness or the third component of adverseness, requiring "open and notorious" use. In short, a mistaken "claim of right" is not the equivalent of adverse use. It is an optional factor relating to one component of adverseness (*i.e.,* (a) that the use not be in subordination to the owner).

Section 458 of the old *Restatement* is only a generalized summary of older American case law. It did not address the specific and varied situations that arose then or that would be developed later in Oregon's law. Even so, the old *Restatement* did anticipate the development of Oregon's law, when it explained the third component of adverse use, that component which requires that the use be open and notorious. It explained that something more than ordinary use

was required when the owner would understand that the use was friendly. The *Restatement* explained:

> "Where a user of land and one having an interest affected by the use [*e.g.*, the owner] have a relationship to each other sufficient in itself to justify the use, the use is not adverse unless knowledge of its adverse character is had by the one whose interest is affected. The responsibility of bringing this knowledge to him lies upon the one making the use. It is not open to a user of land to contend as against one to whom he stands in a relationship sufficient to justify the use that, because the one to whom he stands in this relationship had a reasonable opportunity to learn of the existence of the use and of its nature, the use was as to him open and notorious and therefore adverse. Thus, a licensee cannot begin an adverse use against his licensor merely by repudiating his license under such circumstances that the licensor has a reasonable opportunity to learn of the repudiation. Justice to the licensor requires more than this. It requires that he know of the repudiation. If knowledge does come to him the source is immaterial. It is not necessary that it come from the licensee, but the responsibility of seeing that it does come to him is on the licensee, a responsibility the obligation of which cannot be satisfied by showing that the licensor neglected to avail himself of means of knowledge."

*Restatement (First)* at § 458 comment j (1944). This rule, governing a situation more specific than the generalities of section 458, was quoted as explanation for the decision in *Thompson*, 270 Or at 549, rejecting a prescriptive claim when use had begun with permission. *See also Hamann*, 272 Or at 529.

This commentary is also consistent with the understanding that, when neighbors use roads of unknown origin, the use is "pursuant to a friendly arrangement between neighbors." *Woods*, 254 Or at 436; *Trewin*, 271 Or at 247-48; *Boyer*, 274 Or at 163-64; *Webb*, 205 Or App at 27-28; *Skidmore*, 205 Or App at 597; *Insko*, 235 Or App at 458. After the *Restatement* was updated 56 years later, it acknowledged that such particular fact situations defeat the presumption of adverseness arising from ordinary use and create a "counter-presumption that the initial use was permissive." *Restatement (Third)* at § 2.16 comment g. For that

reason, the claimant must demonstrably interfere with the owner's use of the road or must let the owner know, directly or indirectly, that the use of the road is no longer friendly, in order that the claimant's use may be proven openly and notoriously adverse.

To be sure, nothing in the old *Restatement* elevates a negative component—a lack of subordination—into the positive proof on the element of adverseness, especially without the other prerequisites of adverse use. By its nature, a mistaken belief in the claimant's right can only go so far, because proof of a mistaken belief is only "evidence" of something that is not. It is proof of a negative circumstance—that the claimant's use was not in subordination to the owner. It is like a claimant disproving a defense, while still needing to prove the affirmative claim. To prove that the claimant's use was not nonadverse does not go further to prove the positive proposition that the use is, in fact, adverse. To prove that the claimant had not done something to demonstrate subordination does not prove, thereby, that the claimant had actually done something demonstrably adverse. At best, proof that use was not in subordination means simply that the use still has the potential of being adverse.

In *Restatement* thinking, in order to be adverse, a claimant must still show the use to be wrongful as to the owner and that the use was open and notoriously so. *See Restatement (First)* at § 458 (components (b) and (c)). Nothing in the *Restatement*–old or new–suggests that a subjective and unexpressed belief is somehow complete in itself as "direct evidence" of adverseness. That misconception lies elsewhere—with *Sander.* Nothing in the *Restatement* suggests that an unexpressed "claim of right" is a trump card applicable despite specific situations, like preexisting roads, which assume permissive use is the norm. That proposition will rest elsewhere—with this case.

B.  *Supreme Court Precedent*

The majority opinion correctly observes that the Supreme Court has made references to the *Restatement (First)*, but those references are only references to general concepts in ordinary cases. *See Feldman,* 196 Or at 474 (common driveway built by the claimants' predecessors); *Thompson*

*v. Schuh,* 286 Or 201, 211, 593 P2d 1138 (1979) (the claimants' periodic trips to rural land not open and notorious use); *Hamann,* 272 Or at 529 (prior permissive use and no change in character of use); *Arrien,* 263 Or at 371 (the defendant's periodic flooding of owner's land—a physical invasion—was not in subordination, *i.e.,* was under claim of right, even if the defendant thought he was trespassing); *Hay v. Stevens,* 262 Or 193, 196, 497 P2d 362 (1972) (the claimant's use was not in subordination, despite his statement he would have stopped use of beach path upon objection, because that only meant that he did not claim full ownership).

None of these cases does more than treat the old *Restatement* as a secondary resource involving ordinary principles of prescriptive easements.[7] None of these cases cites the *Restatement* for a theory that, where there has been no physical damage to an owner's land and no interference with the owner's use of a preexisting road on his land, a claimant's unexpressed "claim of right" is somehow "direct evidence" of adverseness. None of these Supreme Court cases employed the *Restatement* for such a proposition. None of these cases criticized, distinguished, or overruled the Supreme Court's decisions in *Woods, Trewin,* and *Boyer* on roads of unknown origin. In other circumstances, claims of noble lineage may lend authority, but, here, we should find no support for a prescriptive easement either in the *Restatement* or in decisions of the Supreme Court.

## C. *Source of the Confusion*

The source of today's confusion can be traced through several cases from correct statements of law to misapplications of those statements. In *City of Ashland v. Hardesty,*

---

[7] The majority cites *Arrien,* 263 Or at 371-72, for its discussion about whether a claimant's use was in subordination to the servient owner. The case did not involve preexisting roads of unknown origin. A claimant's dam openly and notoriously flooded land of the servient owner. Because the claimant was alleged to know that he was trespassing and had said he hoped to "straighten up the matter," the issue was whether that evidence meant his use was in subordination. *Id.* Consistent with comment d of *Restatement (First)* section 458, the court held such flagrant use of the other's property was not in subordination, regardless whether the claimant believed he was entitled. The decision did not suggest that the claimant's subjective claim of right, if he actually had one, would have sufficed in itself to prove adverseness. The periodic flooding from his dam accomplished that. The decision does not suggest that a basis for the majority's conclusion lies in precedent of the Supreme Court.

23 Or App 523, 527-28, 543 P2d 41 (1975), there was no road of unknown origin. The city had built a roadway to its sewer plant, and the roadway deviated from its easements and trespassed on the defendants' land. Although city officials testified that they believed that the roadway followed the easements, we observed that their intent to be lawful did not mean that their use was "subordinate to the property owners whose land they crossed[.]" *Id.* at 528. Giving the text its proper application, we cited the same *Restatement* commentary at issue here for the proposition that a use is not in subordination to a land owner even when a claimant is mistaken about its claim of right. *Id.* (citing *Restatement (First)* at § 458, comment d). This point is paralleled in the law on adverse possession. "An intent to claim land occupied under a mistaken belief of ownership is sufficient to prove hostile intent." *Id.* (citing *Rider v. Pottratz*, 246 Or 454, 456, 425 P2d 766 (1967)). We did not declare that a mistaken "claim of right" was itself "direct evidence" of adverseness. Rather, the city's construction of the roadway on the defendants' land—a physical invasion—was the demonstration of adverse use.

In *Kondor*, there was no road of unknown origin, nor a group of owners sharing a common road in a neighborly arrangement. There were only two tracts of land derived from common owners of both tracts. The northern and southern tracts respectively would become the plaintiffs' and the defendants' lands. Before then, the common owners of both tracts had allowed Mayfield, a third-party user, to build a mill on the southern tract "about 1950" and "shortly thereafter" to build the disputed road that connected the northern tract, across the southern tract, to a public road. 50 Or App at 57. "In 1950," the prior owners of the tracts conveyed the southern tract to the defendants' predecessors, who apparently knew of the original owners' permission to Mayfield for his construction and use of the road. Hauling in the logs over the road, Mayfield built a cabin on the northern tract. The road served as the only access for the northern tract. For 16 years, Mayfield or Boats, the subsequent tenants, lived there.

Mayfield "supposed it was legal to go over the road at all times," because he had built the road and begun renting

from the original owners of both tracts. *Id.* at 58. Whether he was right or wrong about that did not matter. We recited the principle from *City of Ashland*, recalling that, "even if the user mistakenly believes he has the right to use the easement, that use is sufficiently adverse." *Id.* at 60. That is to say, a mistaken belief does not make the use "in subordination" to the land owner. *Id.* The claim was adverse, because the original owner had granted permission for the construction of the road, a fact known to the defendants' predecessors, and because mere acquiescence by the defendants or their predecessors "does not equal permission." *Id.* at 61. A decree for a prescriptive easement was affirmed.

*Kondor* did not declare that a mistaken belief, standing alone, suffices as affirmative evidence in itself that a claimant's use is adverse. *Kondor* declared simply that, even if Mayfield might have been mistaken, his mistake did not mean his use was thereby in subordination to the defendant owners. That was the narrow point borrowed from *City of Ashland*. *Kondor* did not say that a subjective belief (lack of subordination) sufficed in itself as "direct evidence" of adverseness. The term "direct evidence" does not appear in the case.

The analysis in *Kondor* proceeded on the familiar principle that continuous, open, and notorious use of a road would be *presumed* to be adverse—that is, to be without the defendants' permission. That presumption was especially appropriate when the road was not of unknown origin and was instead a road known to have been constructed by the original third-party user himself. In short, *Kondor* was just about the defendants' failure to overcome the plaintiffs' presumption of adverse use. It did not create a new and alternate theory of adverseness. *Kondor* was decided on traditional principles; it did not suggest an alternate way to prove adverseness simply by means of self-serving testimony in an eventual trial about a previously held unspoken, subjective belief during the years of allegedly prescriptive use.

The theory that a subjective "claim of right" or lack of subordination might suffice as affirmative evidence to prove adverseness should be attributed to a case that the trial court did not mention and that plaintiff did not cite or

argue on appeal. In *Sander*, 241 Or App at 297, the claim-
ants' devised that theory and, with its spin, gave *Kondor* a
new meaning. As in *Kondor*, there were in *Sander* only two
adjoining tracts. There was no group of neighbors using a
common road in a neighborly arrangement. The defendants'
predecessor bought what was to become the McKinley prop-
erty in 1969, through which ran a county road. In 1968
and 1971, the plaintiffs' predecessors bought the adjoin-
ing Sander property to the northeast. The upland portion,
which immediately adjoined the McKinley property, could
not be reached by road.

    In 1970, the plaintiffs' predecessors began cross-
ing from the county road, across the McKinley property, to
reach their Sander property to the northeast. Their "primi-
tive road" had never been improved, graded, or surfaced in
any way. It consisted of "two narrow dirt tracks in the grass,
which [were] the result of vehicles repeatedly following the
same route." 241 Or App at 301. One of the plaintiffs' pre-
decessors had always assumed that there was an easement
in place and had never asked for permission to cross the
McKinley property.[8]

    The trial court granted a judgment recognizing a
prescriptive easement for benefit of the plaintiffs. The defen-
dants appealed, asserting that their predecessors had given
permission, and that the plaintiffs had failed to prove that
the primitive road interfered with the defendants' property.
In a creative moment, the claimants reasoned that the lack
of interference could only serve to rebut a presumption of
permissive use, that they were not relying on any presump-
tion, and that what they offered was affirmative evidence in
itself of adverseness. Agreeing with the first premise that
use gives rise to a presumption of adverseness and the sec-
ond premise that a lack of interference serves to rebut the
presumption of adverseness, we accepted the logic of the
plaintiffs' syllogism, in these words:

---

[8] This summary omits, as unnecessary to our discussion, facts concerning
defendants' predecessors erecting new fencing and gates, the plaintiffs' prede-
cessor consequently creating a new pathway across a portion of the defendants'
fields, and defendants' predecessors providing plaintiffs' predecessor a key to the
gate by the county road, as well as the court's conclusion about relocation by
agreement of the location of the prescriptive easement.

"That said, as plaintiffs argue, an easement claimant need not rely on that presumption to establish the element of adverse use. Adverseness can be established directly by showing that the claimant's use was not in subordination to the rights of the property owner. *Kondor*[, 50 Or App at 60]. A claimant's mistaken belief that he or she has the right to use the servient property is sufficient to establish adverse use. *Id.* In this case, plaintiffs contend that they established adversity directly and thus do not rely on the presumption. Because they do not rely on the presumption, we agree with plaintiffs that it is immaterial that the [plaintiffs' predecessors'] use of the McKinley property did not interfere with any of its respective owners' use of it."

241 Or App at 306-07. Of course, *Kondor* did not actually hold that a mistaken belief was itself "sufficient to establish adverse use"; the mistaken belief only avoided viewing the use to be in subordination to the owner. It was a constellation of facts—starting with construction of the road on the defendants' land and ending with the defendants' failure to overcome the plaintiffs' presumption—that established adverseness. Nevertheless, in *Sander*, we went on to conclude "that the [plaintiffs' predecessors'] use of the road on the McKinley property was not in subordination to [defendants' predecessors'] rights and, thus, that their use was adverse." *Id.* at 309. We affirmed the plaintiffs' judgment.

The language in *Sander*, adopting the claimants' novel theory that they were offering an alternate proof of adverseness, would seem to lend support to the majority's conclusion here, if it were not so overshadowed by *Woods, Trewin, Boyer, Webb, Skidmore,* and *Insko,* and if it were not better distinguished and explained on its facts. In *Sander,* there was only the one adjoining parcel that needed access across the defendants' property, such that travel by the one neighbor is of more significance. *Cf. Kondor,* 50 Or App at 57 (road crosses to serve only northern parcel). The plaintiffs and their predecessors made exclusive use of the road. *See Thompson,* 270 Or at 551. There were no other neighbors traveling the road pursuant to an understood neighborly arrangement. *See Woods,* 254 Or at 436. This was a unique one-on-one situation of adjoining parcels.

Perhaps of more significance, this was an unimproved, primitive road whose use seemingly begun in 1970 around the time the plaintiffs' predecessors bought their property. It consisted of two tracks through the grass. Therefore, this "road" was like the two track, primitive pathway along or across fields in *R & C Ranch, LLC*, 177 Or App at 304. Where it appears that the primitive road serves one remote parcel, the adverse use is better explained as the apparent establishment of the road by the claimant's use of the road to reach the remote parcel. The adverseness lies not in the negative, not in the lack of subordination by itself, and not in just the absence of nonadverseness, but in the positive evidence that the primitive path has been created.

In other words, *Sander* was correctly decided, even if it strayed when accepting the claimant's misconception that *Kondor* could be read to say that a mistaken "claim of right" is sufficient in itself to constitute the full equivalent of adverse use. *Sander* need not be overruled. If it deserved any attention, which neither the trial court nor plaintiff gave it, the case only needs to be explained in terms of its facts and familiar principles.

## V.   TROUBLED THEORY

Although *Kondor* was cited by the trial court and the majority opinion, *Kondor* is not the problem, for the reasons reviewed above. It does not stand for the proposition attributed to it, and defendants did correctly distinguish it. If, however, *Sander* cannot be better explained in the terms suggested here, then *Sander*, together with this case, will present serious problems for the law on prescriptive easements.

Although all cases agree that "[e]asements by prescription are not favored," *Wood*, 276 Or at 56, they will now be favored, because prescriptive claims will become much easier to win and often impossible to defend. In nearly every case in which people disagree so vigorously as to hire lawyers, take their dispute to court, and spend life savings in litigation, the easement claimants will insist that they have a right to use the road in dispute, and that, if somehow mistaken, they have a "mistaken claim of right" to use the road.

If claimants did not believe themselves justified, there would never be lawsuits over prescriptive easements. Because nearly all claimants will come to court to swear that they held a subjective belief in their claims, nearly all prescriptive claims will begin with the element of adverseness established by the simple fact that there is a dispute. Although other elements such as continuity or defenses such as express permission will remain, the element of adverseness, as a practical matter, will be all but removed as a necessary element of the claim. Claimants can simply testify that they thought they could use someone's road without permission.

Although all cases agree that proof of a prescriptive easement must be established by clear and convincing evidence, proof of adverseness, when offered in the form of a "lack-of-subordination" will be anything but clear and convincing. Proof of a subjective belief in a person's right to use a road is not a tangible thing and not suitable to meaningful cross-examination. Although circumstantial evidence might be offered to show whether the subjective belief was honestly held, pretrial discovery and trial proof of such matters will prove to be a morass. Because claimants will prove adverseness through their own opinion, efforts at discovery or cross-examination will be a waste of clients' fees, lawyers' efforts, and courts' time.

This problem will be most troubling in this context of roads of unknown origin. Where a number of neighbors cross an owner's land on a road that predated them all, where they share maintenance, and where they assume a neighborly arrangement of permissive use, an owner cannot know which neighbor secretly harbors a "mistaken claim of right" (or lack of subordination) to use the road. An owner will not know against whom to protect from a future prescriptive claim. Surely, it must remain true that ordinary use of preexisting road is *not* presumptively adverse. But, if an uncommunicated, "mistaken claim of right" silently transforms ordinary, non-adverse travel over a shared road into adverse use, then an owner cannot know which of the neighbors holds such a subjective belief.

In cases of preexisting roads, this is not just a problem that adverseness is effectively dropped from the disputable

elements of a claim. The Oregon element requiring *open and notorious* use is now effectively dropped from the claim, as well, whenever roads preexist where mere travel does not demonstrate adverseness.[9] Because an owner cannot tell which neighbor harbors a bad attitude from among those in a cooperative, permissive arrangement, the owner will have no reason to know of an allegedly adverse claim—because a claim now is proven by innocuous travel and an unexpressed attitude.

To suggest that a subjective belief in one's right to use a road is itself, full and complete, open and notorious, "direct evidence" of adverseness is a contradiction in terms. In most situations, it is an oxymoron, because to prove a subjective belief proves nothing. A mistaken "claim of right" is only relevant to disprove subordination; it is not itself affirmative proof of adverseness. This court has already explained that a subjective belief does not make plain use become adverse use. The statement warrants repetition. We have recognized that

> "the question of adverse use does not depend on the claimant's subjective intentions with regard to the disputed road; the question of adverseness turns on whether the property was *actually used in a manner* that was inconsistent with the owner's use."

*Insko*, 235 Or App at 460 (emphasis added). It is the *conduct* of the claimant that matters, not the unseen attitude of the user. *See id.* (rejecting subjective intent).

The claimants in *Sander* may have been ingenious. By offering so-called "direct evidence" of adverseness—that is, the claimant's own belated testimony about a prior, subjective belief—without relying on their travel over the road for a presumption—without any other tangible proof of open, notorious, and adverse activity—without any overtly demonstrable facts that were known or even *could* be known by the defendants—the claimants avoided our long-established case law on preexisting roads of unknown origin. The claimants avoided the need to explain why, with their novel

---

[9] In terms of the *Restatement (First)* formulation, the effect is the same. The third component of adverseness—open and notorious use—will become unnecessary.

conception, three decisions of the Supreme Court and five decisions of this court should be effectively overruled. To overrule those cases *sub silentio* is much easier. It is much easier to assume eight cases on preexisting roads are left untouched, when they are ignored as immaterial in light of another theory of adverseness.

Even if there were a subjective theory of adverseness, *Woods, Trewin, Boyer, Read, Hayward, Webb, Skidmore,* and *Insko* cannot be ignored. At the least, these cases would stand for the point that, in the case of roads of unknown origin or roads built by the land owner, the claimant's ordinary use of an owner's road is a fact of no consequence for a prescriptive claim. This is necessarily true because ordinary travel over roads of unknown origin does not give rise to a presumption of adverseness. This must be doubly true because the majority, like the plaintiffs in *Sander,* declares that plaintiffs are not relying on any presumptions from use. If so, then they cannot rely on the mere travel over the road as something that the landowner should notice as adverse. Ordinary use of a preexisting road is unlike the demonstrated adverseness of creating a roadway across an owner's land. Ordinary travel over a preexisting road does not alert an owner that a neighbor's trip over the road is unfriendly, hostile, or contrary to the owner's rights in his property. Ordinary travel over a preexisting road can mean nothing for a claimant who would shun the presumption of adverseness from such travel and who instead would assert the "direct evidence" of his or her own subjective belief in a right to use the road.

Because such travel is insufficient for adverseness, and because the claimant does not rely on any presumption based on use of a road, we should ask: How is an owner to know that one of the neighbors harbors the unspoken attitude that is a "lack of subordination" or a "mistaken claim of right"? If the law provides that travel over a preexisting road counts for nothing in itself, because such travel is not open and notorious adverse use, then how could the *addition* of the neighbor's eventual testimony at a trial about a previously uncommunicated, subjective belief during the prescriptive period somehow transform unremarkable use into open, notorious, adverse use? There is no good answer.

In root concept, therefore, a subjective theory of adverseness conflicts with Oregon law on prescriptive claims on preexisting roads. In root concept, established law holds that ordinary travel over preexisting roads does not suffice to signal an open and notorious adverse claim; but now the same unremarkable use, when coupled with a belated disclosure of a subjective claim of right *does* constitute a purportedly open and notorious adverse claim. By endorsing this recently developed misconception, today's decision contradicts the principles that underlie eight decisions on prescriptive claims to preexisting roads.

In practice, as in concept, an alternate theory conflicts with Oregon law on preexisting roads. If adverseness can be proven by accepting the claimant's belated testimony about a prior belief as so-called "direct evidence" of adverseness, then no one will ever again need to bother with relying on the presumption of adverseness that arises from open and continuous use of a road for a prescriptive period. Nor will anyone need to prove one of the many, other, legitimate, manifest ways that adverseness might be shown, ranging from directly *telling* the owner that the use is adverse to demonstrating adversity with obvious interference with the owner's own use. To look for such real proof becomes unnecessary. Lawyers will simply choose the easier theory for their clients' cases. The fact that the user did not interfere with the owner's use of the road, that the user did not demonstrate that the character of the use had changed, that the owner has been shown *no* indication of an adverse claim in an "open and notorious" manner will all become immaterial. In practice, the long-settled law on preexisting roads will become a dead letter. If litigants may readily choose an easier theory to prove a prescriptive claim to a preexisting road, then that predictable change in litigation practice should reveal that there is an unacknowledged change in the law.

## VI. THIS CASE

If not our own decisions in *Read, Hayward, Webb, Skidmore*, and *Insko*, then the decisions of the Supreme Court in *Woods, Trewin*, and *Boyer* should control the resolution of this case. Application of that law should be straightforward, accepting the facts as the trial court found them. No one

knows who built Lewis Creek Road. From the start, plaintiff had deeds that told him that there was no legal access to his parcels. Unlike cases in which claimants may establish use of a two-track road across an owner's fields, plaintiff admits that he did not build the road. He just used it. His use of a preexisting road, however, has no significance in suggesting open, notorious, adverse use. *See, e.g., Webb,* 205 Or App at 20. Unlike cases in which the plaintiffs are the lone users of the road, plaintiffs here had nonexclusive use of the road. *Thompson,* 270 Or at 551. The fact that the neighbors shared the costs and tasks of maintenance reflects a cooperative neighborly arrangement, not adverse claims. *Woods,* 254 Or at 436. The fact that defendant Le Roy Hippe and others used the road as their only access likewise reflects a cooperative, neighborly arrangement, not adverse claims. *Id.* The fact that defendant Hippe expressed confusion whether his own use was entitlement or permissive merely expresses the subtlety and confusion of this field of law. An honest and untutored lay witness could not be expected to testify any better, even while resisting an adverse claim.

Although this court defers to the trial court on any factual finding with sufficient evidence, the trial court here did not find "something more" to support a prescriptive claim. The trial court did not believe defendant Hippe's testimony that, when speaking with plaintiff alongside a highway sometime between 2003 and 2005, Hippe had told plaintiff that plaintiff could use the road. Plaintiff agreed the men had talked, but plaintiff testified, "I don't remember the conversation." Plaintiff did not go on to provide "something more." Plaintiff did not testify that, at some time sufficient for the prescriptive period, plaintiff had told defendants that he did not need permission. In fact, when asked if he ever had any conversation with defendant Hippe, prior to the time plaintiff asked for a written easement, plaintiff testified, "I don't believe that was ever discussed." In short, this *was* the classic situation—or as the majority would say, the default situation—in which neighbors use a road in a cooperative arrangement. In the evidence and the trial court's findings, there was not "something more."

Like *Webb,* during all but a latter year when the issue arose, there was no evidence of even a single hostile

encounter between the parties. Although the trial court disbelieved that defendant Hippe verbalized permission, there is still no dispute that defendant gave plaintiff and others a key to the lock on the chain across the road at his property line. The fact that plaintiff "did not seek out defendants' permission to use the roads because [he] did not believe [he] needed it" does not show open and notorious adverseness. *Webb*, 205 Or App at 28. Although plaintiff may have harbored a subjective belief that he had written easements, a subjective belief does not show adverseness.[10] *Insko*, 235 Or App at 460 (rejecting evidence of subjective intentions, beliefs about an easement or outright ownership, and even overt statements made to others during the prescriptive period). There is no evidence that plaintiff ever told defendants that plaintiff thought he had a right to use the road until plaintiff's letter in May 2008, less 10 years after his purchase. Put another way, plaintiff asserted an adverse claim less than 10 years before this action.

The road passes about 60 to 80 feet from defendants' house, but, contrary to the trial court's view, simply viewing a passing car does not bespeak adverse use, especially because defendants had never felt or expressed an objection to plaintiff's use and because a permissive arrangement among neighbors is understood to be the norm.[11] *See, e.g.,* *Woods*, 254 Or at 434. Plaintiff had a cabin on one of his parcels and testified that his trips over the road were limited to recreational use in the summer time. Defendants would have had little reason to have noticed or objected to plaintiff's infrequent trips. *See Thompson v. Schuh*, 286 Or at 201 (periodic, intermittent visits). Passing by on the road is not adverse use, and, more importantly, it is not interference with defendants' use of the road.

When asked, defendant Hippe testified that his wife did not care for the road's dust and that she would like it even less if plaintiff's parcels developed and created heavier use. Yet, because ruts or wear and tear on the road in *Webb* did

---

[10] Misconstruing *Kondor*, the trial court opined that "[b]ecause [p]laintiff *** *thought* he had a right to use the road, adversity is satisfied ***." (Emphasis added.)

[11] The trial court deemed adverseness satisfied by Hippe "[v]iewing vehicle go past his house in close proximity to the subject road[.]"

not suffice, and, because actual, compensable damage to the road did not suffice in *Insko*, some dust from the road cannot suffice as interference with defendants' use. Dust would not notify defendants of an adverse claim. In sum, plaintiff offered no evidence that his use of a road that he shared in common with Larson and Woods was openly and notoriously adverse to defendants. The trial court should have dismissed this claim for a prescriptive easement, because plaintiff failed to offer sufficient evidence by any standard.

## VII. CONCLUSION

If, in the end, neighbors cannot find a mutually agreeable way to provide access, then the law does provide plaintiff with a remedy in the form of a statutory way of necessity, just as he asserted in his letter in May 2008. *See* ORS 376.150 - 376.200 (ways of necessity). If, in the end, we do not find a better response than a subjective theory of adverseness, then, in cases of preexisting roads, we will prove the truth of the tired axiom that bad facts make bad law. Oregon landowners, lawyers, and courts will suffer from a misconception—the misapplication of a "mistaken claim of right."

Ortega, Duncan, Hadlock, and Tookey, J., join in this dissent.